[Cite as *Hulsmeyer v. Hospice of Southwest Ohio, Inc.*, 2013-Ohio-4147.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| PATRICIA HULSMEYER, | : | APPEAL NO. C-120822 |
|  |  | TRIAL NO. A-1201578 |
| Plaintiff-Appellant, | : |  |
|  |  |  |
| vs. | : | *O P I N I O N.* |
|  |  |  |
| HOSPICE OF SOUTHWEST OHIO, INC., | : |  |
|  | : |  |
| JOSEPH KILLIAN, | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| BROOKDALE SENIOR LIVING, INC., | : |  |
|  |  |  |
| Defendants-Appellees. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 25, 2013

*Robert A. Klingler Co. L.P.A.*, *Robert A. Klingler* and *Brian J. Butler*, for Plaintiff-Appellant,

*Dinsmore & Shohl, LLP*, *Michael Hawkins* and *Faith Isenhath*, for Defendants-Appellees Hospice of Southwest Ohio, Inc., and Joseph Killian,

*Tucker Ellis & West LLP*, *Victoria Vance* and *Susan M. Audey* for Defendant-Appellee Brookdale Senior Living Inc.,

*Michael Kirkman* and *Ohio Disability Rights Law and Policy Center, Inc.*, for Amicus Curiae Disability Rights Ohio,

*AARP Foundation Litigation, Kelly Bagby, Kimberly Bernard* and *Alison Falb,* for Amicus Curiae AARP.

Please note:  this case has been removed from the accelerated calendar.



Per Curiam.

{¶1} Plaintiff-appellant Patricia Hulsmeyer appeals the trial court's judgment dismissing her claims for retaliation under R.C. 3721.24 and for wrongful discharge in violation of public policy against defendants-appellees, her former employer, Hospice of Southwest Ohio, Inc. ("Hospice"), its CEO, Joseph Killian, and Brookdale Senior Living, Inc. ("Brookdale"), a corporation that operated a long term and residential care facility where Hospice provided services.

{¶2} Because Hulsmeyer need not report suspected abuse or neglect of a nursing home resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24, we reverse that part of the trial court's judgment dismissing her retaliation claim under R.C. 3721.24 against Hospice, Killian, and Brookdale. We, affirm however, the dismissal of her claim against Hospice for wrongful discharge in violation of public policy because R.C. 3721.24 provides Hulsmeyer with an adequate remedy.

### Hulsmeyer's Complaint

{¶3} Hulsmeyer is a registered nurse. She formerly served as a team manager for Hospice. Her duties included overseeing the care of Hospice's patients who resided at one of Brookdale's facilities in Cincinnati, and supervising other Hospice nurses who provided care to those residents. On October 19, 2011, during a patient care meeting of Hospice employees in which Hulsmeyer participated, a Hospice nurse indicated that one of Hospice's patients at Brookdale had suffered some bruising, which she feared was the result of abuse or neglect at the hands of Brookdale staff. A second Hospice employee, an aide, had taken photographs of the injuries at the patient's request, which she showed to those in attendance. Three Hospice employees, who were present at the meeting, informed Hulsmeyer that she was obligated to call Brookdale and the patient's family immediately to report the suspected abuse or neglect.

3

{¶4} Hulsmeyer immediately called the Director of Nursing at Brookdale, Cynthia Spaunagle, to report her suspicions of abuse or neglect. Spaunagle said that she would take all appropriate measures, including contacting the patient's daughter after ordering an examination of the injuries. Hulsmeyer then reported the suspected abuse to her own supervisor, Hospice's Chief Clinical Officer, Isha Abdullah, but Abdullah did not appear to take the report seriously. Finally, Hulsmeyer called the patient's daughter, who was also the patient's power of attorney, reported the suspected abuse, and informed her that Spaunagle would be contacting her. The following day Hulsmeyer submitted a written report to Abdullah concerning the suspected abuse or neglect of the patient.

{¶5} On October 24, 2011, the patient's daughter contacted Hulsmeyer and left a voice message stating that Spaunagle had not yet contacted her. Later that same day, the patient's daughter contacted Hulsmeyer and informed her that she had called Ida Hecht, the Executive Director of Brookdale, seeking information about her mother's injuries. Hecht had not heard about the injuries or Hulsmeyer's suspicions of abuse or neglect, but she told the patient's daughter that she would look into the matter. On November 4, 2011, a meeting was held at Brookdale to discuss the patient's care. Numerous Brookdale and Hospice employees were present, including Hulsmeyer, as well as the patient's son and daughter.

{¶6} On November 11, 2011, Hulsmeyer began a planned leave of absence to undergo a medical procedure and was not to return to work until November 28, 2011. During Hulsmeyer's leave of absence, Jackie Lippert, Regional Health and Wellness Director for Brookdale, contacted Hospice and demanded to know who had informed the patient's daughter of the suspected abuse or neglect. During the telephone call, Ms.

Lippert stated, "We got rid of our problem [Spaunagle], what are you going to do?" Brookdale had terminated Spaunagle.

{¶7} On November 28, 2011, Hulsmeyer's first day back at work following her leave of absence, Abdullah asked Hulsmeyer to join her in her office. Betty Barnett, Hospice's COO and Director of Human Resources, was also in Abdullah's office. They explained to Hulsmeyer that they all had to call Lippert. Lippert was irate. She stated that the patient's daughter had told her that she would not recommend Brookdale to anyone. She accused Hulsmeyer of making Brookdale "look bad" and "stirring up problems." After Barnett asked what should have been done differently, Lippert snapped, "The family should not have been called and the photographs should not have been taken." Finally, Lippert threatened that Brookdale would cease recommending Hospice to its residents.

{¶8} Two days later, Barnett called Hulsmeyer into her office and informed her that she would be terminated. Taken aback by the termination, Hulsmeyer attempted to meet with Killian, but Barnett informed Hulsmeyer that Killian had instructed Barnett to "cut ties" with Hulsmeyer and that he "[didn't] want to be associated with her" because he "[didn't] have time."

{¶9} On November 30, 2011, in a letter signed by Killian and Abdullah, Hospice informed Hulsmeyer that she was terminated. In the letter, Hospice stated that Hulsmeyer had not timely notified Hospice's "Management" about the suspected abuse, criticized her for notifying the patient's daughter about the suspected abuse, and claimed Hospice's "upper management" had not learned about the suspected abuse until Lippert had contacted Abdullah, sometime after November 11, 2011. The termination letter also specifically identified the fact that Hulsmeyer had contacted the patient's daughter as justification for her termination.

5

{¶10} On February 28, 2012, Hulsmeyer filed suit against Brookdale, Hospice, and Killian. She alleged that Brookdale, Hospice, and Killian had wrongfully terminated her employment in violation of R.C. 3721.24 for reporting suspected abuse and neglect of a nursing home resident. She also asserted a claim against Hospice for wrongful discharge in violation of public policy and a claim against Brookdale for tortious interference with a business relationship. Hospice, Killian, and Brookdale moved pursuant to Civ.R. 12(B)(6) to dismiss all of Hulsmeyer's claims against them. The trial court dismissed all of Hulsmeyer's claims without prejudice except her claim for tortious interference with a business relationship against Brookdale. After conducting limited discovery, Hulsmeyer dismissed with prejudice her remaining claim against Brookdale to pursue this appeal.

### Jurisdiction

{¶11} Brookdale argues that this court lacks jurisdiction over Hulsmeyer's appeal. It asserts that Hulsmeyer is not appealing from a final appealable order because the trial court dismissed her public policy and retaliation claims without prejudice. *See* Civ.R. 41(B)(3); *see also Natl. City Commercial Capital Corp. v. AAAA at Your Serv., Inc.*, 114 Ohio St.3d 82, 2007-Ohio-2942, 868 N.E.2d 663, ¶ 8. An order granting a motion to dismiss for failure to state a claim, however, even if expressly dismissed without prejudice, may be final and appealable if the plaintiff cannot plead the claims any differently to state a claim for relief. *See George v. State*, 10th Dist. Franklin Nos. 10AP-4 and 10AP-97, 2010-Ohio-5262, ¶ 13, citing *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 2008-Ohio-5379, 897 N.E.2d 147, ¶ 17. Here, the trial court's dismissal of Hulsmeyer's public policy and retaliation claims was based upon its conclusion that they failed as a matter of law.

{¶12} The trial court held that Hulsmeyer could not state a claim for retaliation because R.C. 3721.24 protects a nursing home employee from retaliation only for reporting or intending to report suspected abuse or neglect of a resident to the Ohio Director of Health and that Hulsmeyer had failed to allege that she had reported or intended to report the suspected abuse and neglect to the Ohio Director of Health. It further held that Ohio public policy would not be jeopardized if nursing home employees are terminated for reporting abuse or neglect because R.C. 3721.24 affords them an adequate remedy.

{¶13} Notwithstanding the trial court's notation that it was dismissing the claims without prejudice, no further allegations or statements of facts consistent with the pleadings could cure the defect to these claims. Unless Hulsmeyer were to have disavowed her prior statement that she had not made a report to the Ohio Director of Health, which would have been inconsistent with the allegations in her present complaint, the trial court's conclusion with respect to her retaliation claim would have been unalterable. Similarly, even if Hulsmeyer were to change the facts of her complaint, her public policy claim would still fail as a matter of law based upon the trial court's conclusion that she could not satisfy the jeopardy element of the claim because R.C. 3721.24 had provided her with an adequate remedy. Because there would be no possible factual scenario under which she could state a claim for retaliation in violation of R.C. 3721.24 and for wrongful discharge in violation of public policy, the trial court's dismissal of her claims was in fact an adjudication of the merits of those claims. *See State ex rel. Arcadia Acres v. Ohio Dept. of Job & Family Servs.*, 123 Ohio St.3d 54, 2009-Ohio-4176, 914 N.E.2d 170, ¶ 15. We, therefore, conclude that we have jurisdiction to entertain her appeal.

### Standard of Review

{¶14} In two assignments of error, Hulsmeyer argues that the trial court erred in dismissing her retaliation and public policy claims for failure to state a claim under Civ.R. 12(B)(6). We review dismissals by the trial court under Civ.R. 12(B)(6) under a de novo standard of review. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In determining the appropriateness of a dismissal, we, like the trial court, are constrained to take the allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and then to decide if the plaintiff has stated any basis for relief. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). A dismissal should be granted only if the plaintiff can plead no set of facts that would entitle it to relief. *O'Brien v. Univ. Community Tenants Union, Inc.*, 42 Ohio St.2d 242, 327 N.E.2d 753 (1975), syllabus.

### Retaliation Claim under R.C. 3721.24

{¶15} In her first assignment of error, Hulsmeyer argues the trial court erred in dismissing her claim for retaliation under R.C. 3721.24.

{¶16} The trial court held that R.C. 3721.24 only protects employees from retaliation who report or intend to report abuse or neglect to the Ohio Director of Health. Because Hulsmeyer had not alleged that she had reported or intended to report the suspected abuse to the Director of Health, she could not state a claim for relief under R.C. 3721.24. In reaching this conclusion, the trial court relied upon the Eighth Appellate District's decision in *Arsham-Brenner v. Grande Point Health Care Comm.*, 8th Dist. Cuyahoga No. 74835, 2000 Ohio App. LEXIS 3164 (July 13, 2000), and an unreported opinion from the Sixth Circuit, *Davis v. Marriott Internatl., Inc.*, 6th Cir. No. 04-4156, 2005 U.S. App. LEXIS 21789 (Oct. 4, 2005), which had followed *Arsham-Brenner*.

{¶17} In *Arsham-Brenner*, the Eighth District held that the protections of R.C. 3721.24 apply only when an employer learns that an individual has reported abuse or neglect to the Ohio Director of Health, and thereafter retaliates against that individual for making such a report to the agency. *Arshem-Brenner* at \*21. The court reached this conclusion by reading R.C. 3721.24 together with R.C. 3721.22 and 3721.23. The court noted that "[u]nder R.C. 3721.22(A), a licensed health professional is obligated to report suspected abuse or neglect 'to the director of health.' Sections B and C describe voluntary reporting to the 'director of health.' The intervening statute, R.C. 3721.23, refers to the duties of the director of health to investigate allegations." The court noted that by "[r]eading these statutes together, we believe that R.C. 3721.24 forbids retaliation for reports, whether obligatory or voluntary, made only to the director of health pursuant to R.C. 3721.22. Any reports to others, such as to appellant's employer, of suspected resident abuse or neglect, do not qualify for protection under R.C. 3721.24(A)." *Id.*

{¶18} Similarly, in *Davis v. Marriott Internatl., Inc.*, the Sixth Circuit rejected an employee's claim that a report of suspected abuse to her supervisors satisfied R.C. 3721.24. It stated that the Eighth District's interpretation of the statute in *Arsham-Brenner* was far from unreasonable, given that the Ohio Supreme Court had held that " 'all statutes which relate to the same general subject matter must be read in pari materia' " and that it "ha[d] previously construed whistleblower statutes narrowly." *Davis* at \*8, quoting *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16, and citing *Kulch v. Structural Fibers, Inc.,* 78 Ohio St.3d 134, 677 N.E.2d 308 (1997). As a result, the Sixth Circuit followed *Arsham-Brenner*, read the statutes together, and held that the employee's complaint had failed to state

a claim for retaliatory discharge under R.C. 3721.24 because she had not alleged that she had made or intended to make a report to the director of health. *Davis* at *9.

{¶19} Hulsmeyer argues that the trial court, as well as the *Arsham-Brenner* and *Davis* courts, erred by reading R.C. 3721.24 in pari materia with R.C. 3721.22 and 3721.23. She argues that under the rules of statutory construction, a court must first look to the language of the statute, itself, and because R.C. 3721.24 is unambiguous, there is no need to look to R.C. 3721.22 or 3721.23 to interpret R.C. 3721.24. Hospice, Killian, and Brookdale, argue, on the other hand, that this court should follow the interpretation of R.C. 3721.24 set forth in *Arsham-Brenner* and *Davis*. They argue that because R.C. 3721.22 and 3721.24 relate to the same subject matter—reporting resident abuse and neglect—that they must be construed together and be read in pari materia.

{¶20} The interpretation of a statute is a matter of law that an appellate court reviews under a de novo standard of review. *Akron Centre Plaza, L.L.C. v. Summit Cty. Bd. of Revision*, 128 Ohio St.3d 145, 2010-Ohio-5035, 942 N.E.2d 1054, ¶ 10. The Ohio Supreme Court has held that in interpreting a statute, a court must first look to the language of the statute itself. *See Spencer v. Freight Handlers, Inc.*, 131 Ohio St.3d 316, 2012-Ohio-880, 964 N.E.2d 1030, ¶ 16. Words used in a statute must be read in context and accorded their normal, usual, and customary meaning. R.C. 1.42. If the words in a statute are "free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making body, there is no occasion to resort to other means of interpretation." *State v. Hairston*, 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 12 quoting *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "An unambiguous statute is to be

applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus.

{¶21} "It is only where the words of a statute are ambiguous, are based upon an uncertain meaning, or, if there is an apparent conflict of some provisions, that a court has the right to interpret a statute." *Brooks v. Ohio State Univ.*, 111 Ohio App.3d 342, 349, 676 N.E.2d 162 (10th Dist.1996). A statute is ambiguous where its language is susceptible of more than one reasonable interpretation. *In re Baby Boy Brooks*, 136 Ohio App.3d 824, 829, 737 N.E.2d 1062 (10th Dist.2000). " 'When a statute is subject to more than one interpretation, courts seek to interpret the statutory provision in a manner that most readily furthers the legislative purpose as reflected in the wording used in the legislation.' " *AT&T Communications of Ohio, Inc. v. Lynch*, 132 Ohio St.3d 92, 2012-Ohio-1975, 969 N.E.2d 1166, ¶ 18, quoting *State ex rel. Toledo Edison Co. v. Clyde*, 76 Ohio St.3d 508, 513, 668 N.E.2d 498, (1996). In interpreting an ambiguous statute, a court may inquire into the legislative intent behind the statute, its legislative history, public policy, laws on the same or similar subjects, the consequences of a particular interpretation, or any other factor identified in R.C. 1.49. *See Toledo Edison*, 76 Ohio St.3d at 513-514, 668 N.E.2d 498. Furthermore, when interpreting a statute, courts must avoid unreasonable or absurd results. *State ex rel. Asti v. Ohio Dept. of Youth Servs.,* 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, ¶ 28.

{¶22} R.C. 3721.24 provides in pertinent part:

(A) No person or government entity shall retaliate against an employee or another individual used by the person or government entity to perform any work or services who, in good faith, makes a report of suspected abuse or neglect of a resident or

misappropriation of the property of a resident; indicates an intention to make such a report; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation. For purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.

**{¶23}** After reading the statute, we agree with Hulsmeyer that the plain language of R.C. 3721.24(A) forbids retaliation "against an employee or another individual used by the person or government entity to perform any work or services who, in good faith, makes or indicates an intention to make a report of suspected abuse or neglect of a resident * * *." The statute provides protection for any reports of suspected abuse and neglect that are made or intended to be made, not just those reports that are made or intended to be made to the Director of Health.

**{¶24}** Had the legislature meant to limit the protection afforded to only reports of suspected abuse or neglect made to the Director of Health, it could have easily done so by either directly inserting the words "to the Director of Health" after the word "report," by referencing R.C. 3721.22 in conjunction with report, or by referring to the report made as one specified under R.C. Chapter 3721. The

12

legislature, however, did not employ these words and we may not add them to the statute. *See State v. Taniguchi*, 74 Ohio St.3d 154, 156, 656 N.E.2d 1286 (1995) (holding that "a court should give effect to the words actually employed in a statute and should not delete words used, or insert words not used, in the guise of interpreting the statute."); *see also Wachendorf v. Shaver*, 149 Ohio St. 231, 236-37, 78 N.E.2d 370 (1948).

{¶25} Because the statute is unambiguous and does not limit reports of suspected abuse or neglect to only those reports made or intended to be made to the Director of Health, we need not look to R.C. 3721.22 and 3721.23 for assistance in interpreting the statute. *See State ex rel. Hermann v. Klopfleisch*, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995) (the in pari materia rule may only be used in interpreting statutes where some doubt or ambiguity exists). Because Hulsmeyer need not report suspected abuse or neglect of a nursing home resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24, the trial court erred in dismissing her retaliation claim under R.C. 3721.24 against Hospice, Killian, and Brookdale on this basis.

{¶26} Brookdale additionally argues that Hulsmeyer's retaliation claim fails as a matter of law because Hulsmeyer has failed to allege that she was "used by" Brookdale to perform any work or services. R.C. 3721.24 provides a cause of action for an "employee or another individual used by the person or government entity to perform any work or services" who is terminated for reporting suspected abuse and neglect. After reviewing the allegations in her complaint, however, we find that Hulsmeyer has alleged sufficient facts to withstand Brookdale's motion to dismiss. Hulsmeyer alleged that Brookdale used Hospice nurses in conjunction with its own staff to provide patient care at its long-term care facility in several ways.

13

{¶27} First, she alleged that she was used by Brookdale to oversee the care for certain residents and to monitor the care of other nurses providing care for those residents. She further alleged that she also attended a meeting at Brookdale's facility to consult with Brookdale's staff and the patient's family to ensure the patient was receiving proper care. These facts were sufficient to withstand Brookdale's motion to dismiss.

{¶28} Because R.C. 3721.24 does not limit reports of suspected abuse and neglect to only those reports made to the Ohio Director of Health, and because Hulsmeyer has pleaded sufficient facts to state a claim against Hospice, Killian, and Brookdale, we sustain her first assignment of error.

### Public Policy Claim

{¶29} In her second assignment of error, Hulsmeyer argues that the trial court erred in dismissing her claim for wrongful discharge in violation of public policy against Hospice on the basis that she had an adequate remedy available pursuant to R.C. 3721.24 and thus, could not meet the jeopardy element of her claim.

{¶30} In order to state a claim for wrongful discharge in violation of public policy, a plaintiff must show:

> (1) That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) The employer lacked overriding legitimate

business justification for the dismissal (the overriding justification element).

*Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995). The first two elements—the clarity element and the jeopardy element—are questions of law to be determined by the court, while the third and fourth elements—the causation element and the overriding business justification element—are questions of fact for the trier of fact. *Id.*

**{¶31}** In *Dolan v. St. Mary's Home*, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716 (1st Dist.) this court followed the Ohio Supreme Court's decision in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 241, 2002-Ohio-3994, 773 N.E.2d 526. We held that because the remedies provided by R.C. 3721.24 were sufficient to vindicate the "public policy embodied in R.C. Chapter 3721 of protecting the rights of nursing-home residents and of others who would report violations of those rights," the public policy expressed in R.C. Chapter 3721 would not be jeopardized by the lack of a common-law public-policy claim. *Id.* at ¶ 17. Because Hulsmeyer has a remedy by way of a claim for retaliation under R.C. 3721.24, the trial court properly dismissed her claim for wrongful discharge in violation of public policy. We, therefore, overrule her second assignment of error.

### *Conclusion*

**{¶32}** In conclusion, we affirm the portion of the trial court's judgment dismissing Hulsmeyer's public policy claim, but we reverse that portion of its judgment dismissing Hulsmeyer's claim for retaliation under R.C. 3721.24. We, therefore, remand this cause for further proceedings consistent with this opinion and the law. We recognize that our resolution of Hulsmeyer's first assignment of error conflicts with the Eighth District Court of Appeals in *Arsham-Brenner v. Grande*

*Point Health Care,* 8th Dist. Cuyahoga No. 74835, 2000 Ohio App. LEXIS 3164 (July 31, 2000). We, therefore, certify to the Supreme Court of Ohio, pursuant to Section 3(B)(4), Article IV, Ohio Constitution, the following issue for review and final determination: "Must an employee or another individual used by the person or government entity to perform any work or services make a report or indicate an intention to report suspected abuse or neglect of a nursing home resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24(A)?"

Judgment affirmed in part, reversed in part, and cause remanded.

**HENDON, P.J., CUNNINGHAM** and **FISCHER, JJ.,** concur.

Please note:

The court has recorded its own entry this date.