**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Hulsmeyer v. Hospice of Southwest Ohio, Inc.,* **Slip Opinion No. 2014-Ohio-5511.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-5511

HULSMEYER, APPELLEE AND CROSS-APPELLANT, v. HOSPICE OF SOUTHWEST

OHIO, INC., ET AL., APPELLANTS AND CROSS-APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Hulsmeyer v. Hospice of Southwest Ohio, Inc.,***

**Slip Opinion No. 2014-Ohio-5511.]**

*An employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-care-facility or residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24.*

(Nos. 2013-1644 and 2013-1766—Submitted—Decided December 23, 2014.)

APPEAL and CROSS-APPEAL from and CERTIFIED by the Court of Appeals for

Hamilton County, No. C-120822, 2013-Ohio-4147.

_____

SYLLABUS OF THE COURT

An employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-

care-facility or residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24.

_____

**KENNEDY, J.**

## I. Introduction

{¶ 1}   In this opinion we address (1) a discretionary appeal by Hospice of Southwest Ohio, Inc. ("Hospice"), Joseph Killian, Hospice's chief executive officer, and Brookdale Senior Living, Inc. ("Brookdale"), (2) a cross-appeal by Patricia Hulsmeyer, and (3) a certified-conflict case from the First District Court of Appeals.   The certified conflict by the court of appeals is whether "an employee or another individual used by a person or government entity to perform work or services [must] report or indicate an intention to report suspected abuse or neglect of a nursing home resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24(A)."   Appellants and cross-appellees assert the following proposition of law: "R.C. 3721.24 and 3721.22 are related statutes that should be read together and, when read together, a claim for retaliation under R.C. 3721.24 requires a person reporting suspected abuse or neglect to make that report to the Director of Health."

{¶ 2}   On cross-appeal, Hulsmeyer asserts the following proposition of law: "If R.C. §3721.24 protects only employees or other persons who make reports of suspected abuse or neglect of a resident to the Director of Health, then persons who make such reports to an employer, to a family member of the resident, to law enforcement, or to other appropriate persons or entities must be permitted to assert claims for retaliation in violation of public policy."

{¶ 3}   Initially, we address an issue regarding the certified question that was not raised by any party and does not change the outcome in this case but that

2

we believe needs to be addressed to ensure the clarity of our holding. The issue certified as being in conflict contemplates reporting suspected abuse or neglect of a "nursing home resident." R.C. 3721.24 discusses reporting abuse of a "resident," and "resident" is defined in R.C. 3721.21(F) as including "a resident, patient, former resident or patient, or deceased resident or patient of a *long-term care facility* or a *residential care facility*." (Emphasis added.) Accordingly, we modify the issue certified as follows:

> Must an employee or another individual used by a person or government entity to perform work or services make a report or indicate an intention to report suspected abuse or neglect of a *long-term-care-facility* or a *residential-care-facility* resident to the Ohio Director of Health to state a claim for retaliation under R.C. 3721.24(A)?

{¶ 4} We answer the certified question in the negative and hold that an employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-care-facility or a residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24. Because we hold that Hulsmeyer has stated a cognizable retaliatory-discharge claim under R.C. 3721.24, we decline to address her cross-appeal. Accordingly, we affirm the judgment of the court of appeals.

## II. Facts and Procedural History

{¶ 5} Hospice is an organization that provides nursing care for persons who are terminally ill. Hospice does not have its own facility to provide inpatient care in southwest Ohio. Instead, it provides nursing care to patients where they

live. In 2011, Hospice provided care to residents of a residential care facility owned by Brookdale, including Pat Cinquina, an 81-year-old woman.

{¶ 6} Because Hulsmeyer's claims were resolved on a motion to dismiss for failure to state a claim, in reviewing this case, we accept as true all material allegations in her complaint and construe all reasonable inference in her favor. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). In April 2010, Hospice hired Patricia Hulsmeyer as a registered-nurse case manager. Eight months later, Hulsmeyer was promoted to team manager. As a team manager, Hulsmeyer oversaw the care of Hospice patients and monitored the work of other Hospice nurses and aides. At an October 19, 2011 patient-care meeting, a Hospice nurse indicated that she had noticed bruising on Cinquina and that she suspected that abuse or neglect by Brookdale's staff had caused the bruises. Rachel Brown, an aide, divulged that she had used her cell phone to take pictures of bruising on Cinquina's body. Brown forwarded the pictures to Hulsmeyer's phone. A Hospice nurse and staff doctor at the meeting advised Hulsmeyer that she was obligated to notify Brookdale and Cinquina's family of the suspected abuse or neglect. Hulsmeyer immediately called Brookdale and reported the suspected abuse or neglect to Cindy Spaunagle, Brookdale's director of nursing, who indicated that she would examine Cinquina and then contact Cinquina's daughter after the examination. Hulsmeyer then informed Isha Abdullah, the chief clinical officer of Hospice, of the suspected abuse or neglect. And after she left Abdullah's office, Hulsmeyer informed Cinquina's daughter of the suspected abuse or neglect.

{¶ 7} At a November 2011 meeting at Brookdale to discuss Cinquina's care, Brown's cell phone was passed around so that the photo of Cinquina's bruising could be seen. Attending the meeting were Hulsmeyer, Spaunagle, nurses, Cinquina's son and daughter, and others.

**{¶ 8}** Contrary to the assertion in Hulsmeyer's complaint, Abdullah claimed in a deposition that she did not learn of the suspected abuse or neglect until she received a call from a Brookdale employee. Abdullah claimed that Hulsmeyer violated Hospice's company policy by not first reporting the suspected abuse or neglect to Hospice management.

**{¶ 9}** On November 30, 2011, Hospice terminated Hulsmeyer. The termination letter stated that Hospice has a "policy that states, 'All suspected abuse, neglect or exploitation of patients and suspected abuse or neglect of children will be reported immediately to CEO/designee.' " The letter gives three reasons for Hulsmeyer's discharge: (1) Hulsmeyer permitted photos of Cinquina to be taken without receiving authorization from a person with power of attorney, (2) Hulsmeyer notified Brookdale and Cinquina's daughter of the suspected abuse or neglect without first notifying Hospice, in violation of Hospice's policy, and (3) Hulsmeyer improperly shared the photos at a patient-care conference to discuss Cinquina's care, which was attended by staff from both Hospice and Brookdale and Cinquina's family, before informing Hospice of the suspected abuse or neglect.

**{¶ 10}** On the termination letter, next to the word "Comments" is the following handwritten statement by Hulsmeyer:

> I do not agree with the above statement. I was not provided guidance by my superiors in regards to the policy regarding suspected abuse/neglect. I reported the concerns that were brought to my attention on 10/19 to Isha Abdulla[h], CCO. I asked her for direction on how to handle the situation. I told her that social work and the team [doctor] stated I should and was obligated to notify the facility and the family of the concerns. She did not discourage me from doing so.

I did not authorize photos of the patient to be taken any time.

**{¶ 11}** Hulsmeyer filed a civil action seeking damages against Hospice, Joseph Killian, and Brookdale. The complaint alleged that she had a statutory retaliatory-discharge claim under R.C. 3721.24 and a common-law wrongful-discharge claim against Hospice and Killian for firing her for reporting suspected abuse or neglect and against Brookdale for inducing Hospice to fire her. Hospice, Killian, and Brookdale filed motions to dismiss alleging that Hulsmeyer's statutory retaliatory-discharge claim failed to state a claim upon which relief could be granted. The motions to dismiss alleged that an employee may file a retaliatory-discharge claim under R.C. 3721.24 only if the employee reported the suspected abuse or neglect to the Ohio director of health, which Hulsmeyer did not do. The trial court agreed and granted the motions to dismiss regarding Hulsmeyer's retaliatory-discharge claims under R.C. 3721.24. The trial court also held that Hulsmeyer's common-law wrongful-discharge claim failed to state a claim because R.C. 3721.24 was an adequate statutory remedy to protect society's interests in encouraging employees to report suspected abuse or neglect.

**{¶ 12}** Hulsmeyer appealed. The court of appeals reversed the trial court's judgment in part and affirmed it in part. The court of appeals reversed the trial court's judgment to the extent that it dismissed Hulsmeyer's statutory retaliatory-discharge claim. The court of appeals held that the plain language of R.C. 3721.24(A) does not require an employee or other person to report suspected abuse or neglect to the Ohio director of health in order to be protected from retaliation. However, the court of appeals affirmed the trial court judgment to the extent that it dismissed Hulsmeyer's common-law wrongful-discharge claim.

**{¶ 13}** We accepted Hospice's, Killian's, and Brookdale's joint discretionary appeal and Hulsmeyer's cross-appeal. 138 Ohio St.3d 1412, 2014-

Ohio-566, 3 N.E.3d 1215. We also determined that a conflict exists and consolidated the cases. *Id.*

### III. Analysis

**{¶ 14}** R.C. 3721.24 provides a retaliatory-discharge cause of action for employees who are terminated for reporting or indicating an intention to report suspected abuse or neglect of long-term-care-facility or residential-care-facility residents. The question is whether the report of suspected abuse or neglect must be made to the director of health in order to state a cognizable retaliatory-discharge claim.

**{¶ 15}** Hospice, Killian, and Brookdale (hereinafter referred to collectively as "defendants") argue that R.C. 3721.24 is ambiguous because it does not indicate to whom an employee must report or intend to report suspected abuse or neglect. Therefore, defendants argue, we should interpret R.C. 3721.24 by reading it in pari materia with R.C. 3721.22 and hold that an employee must report or indicate an intention to report the suspected abuse or neglect to the director of health in order to have a cognizable retaliatory-discharge claim under R.C. 3721.24.

**{¶ 16}** Hulsmeyer counters that there is no need to interpret R.C. 3721.24 because its plain language does not limit to whom a report of suspected abuse or neglect must be made. Alternatively, in her cross-appeal, Hulsmeyer argues that if the court holds that an employee has a cognizable retaliatory-discharge claim under R.C. 3721.24 only if the employee reports or intends to report the suspected abuse or neglect to the Ohio director of health, then the court should recognize a common-law wrongful-discharge cause of action if the employee suffers retaliation for making the report or intending to make the report to someone other than the director of health.

A. R.C. 3721.22 and 3721.24

{¶ 17} In 1990, the General Assembly passed Am.Sub.H.B. No. 822, which enacted R.C. 3721.22 and 3721.24. Am.Sub.H.B. 822, 143 Ohio Laws, Part IV, 6652, 6689, 6692.

{¶ 18} We begin our analysis by examining R.C. 3721.24, the provision in question, and R.C. 3721.22, the provision that defendants argue is pivotal in construing R.C. 3721.24.

{¶ 19} R.C. 3721.22 states:

(A) *No licensed health professional* who knows or suspects that a resident has been abused or neglected, or that a resident's property has been misappropriated, by any individual used by a long-term care facility or residential care facility to provide services to residents, *shall fail to report* that knowledge or suspicion to the *director of health*.

(B) *Any person*, including a resident, who knows or suspects that a resident has been abused or neglected, or that a resident's property has been misappropriated, by any individual used by a long-term care facility or residential care facility to provide services to residents, *may report* that knowledge or suspicion to the *director of health*.

(C) Any person who in good faith reports suspected abuse, neglect, or misappropriation to the director of health, provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director, or participates in a hearing conducted under section 3721.23 of the Revised Code is not subject to criminal prosecution, liable in damages in a tort or other civil action, or subject to professional

disciplinary action because of injury or loss to person or property allegedly arising from the making of the report, provision of information, or participation in the hearing.

(D) If the director has reason to believe that a violation of division (A) of this section has occurred, the director may report the suspected violation to the appropriate professional licensing authority and to the attorney general, county prosecutor, or other appropriate law enforcement official.

(E) No person shall knowingly make a false allegation of abuse or neglect of a resident or misappropriation of a resident's property, or knowingly swear or affirm the truth of a false allegation, when the allegation is made for the purpose of incriminating another.

(Emphasis added.)

{¶ 20} R.C. 3721.24 states:

(A) No person or government entity shall retaliate against an *employee* or *another individual used by the person or government entity to perform any work or services* who, in good faith, *makes a report of suspected abuse or neglect* of a resident or misappropriation of the property of a resident; *indicates an intention to make such a report*; provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health; or participates in a hearing conducted under section 3721.23 of the Revised Code or in any other administrative or judicial proceedings pertaining to the suspected abuse, neglect, or misappropriation. For purposes of

this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.

(B) No person or government entity shall retaliate against a resident who reports suspected abuse, neglect, or misappropriation; indicates an intention to make such a report; provides information during an investigation of alleged abuse, neglect, or misappropriation conducted by the director; or participates in a hearing under section 3721.23 of the Revised Code or in any other administrative or judicial proceeding pertaining to the suspected abuse, neglect, or misappropriation; or on whose behalf any other person or government entity takes any of those actions. For purposes of this division, retaliatory actions include abuse, verbal threats or other harsh language, change of room assignment, withholding of services, failure to provide care in a timely manner, and any other action intended to retaliate against the resident.

(C) Any person has a cause of action against a person or government entity for harm resulting from violation of division (A) or (B) of this section. If it finds that a violation has occurred, the court may award damages and order injunctive relief. The court may award court costs and reasonable attorney's fees to the prevailing party.

(Emphasis added.)

B. Statutory Construction

**{¶ 21}** The goal of statutory construction is to ascertain and give effect to the intent of the General Assembly. *State v. Hairston,* 101 Ohio St.3d 308, 2004-Ohio-969, 804 N.E.2d 471, ¶ 11, citing *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph one of the syllabus. In determining the intent of the General Assembly, "we must first look to the statutory language and the purpose to be accomplished." *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 12.

**{¶ 22}** When statutory language is ambiguous, the rules of statutory interpretation must be applied to determine the intent of the legislature. *Wingate v. Hordge*, 60 Ohio St.2d 55, 58, 396 N.E.2d 770 (1979). "The *in pari materia* rule of construction may be used in interpreting statutes where some doubt or ambiguity exists." *State ex rel. Herman v. Klopfleisch*, 72 Ohio St.3d 581, 585, 651 N.E.2d 995 (1995), citing *State Farm Mut. Auto. Ins. Co. v. Webb*, 54 Ohio St.3d 61, 63-64, 562 N.E.2d 132 (1990); *State ex rel. Celebrezze v. Allen Cty. Bd. of Commrs.*, 32 Ohio St.3d 24, 27-28, 512 N.E.2d 332 (1987). " 'In reading statutes in pari materia and construing them together, this court must give a reasonable construction that provides the proper effect to each statute.' " *Blair v. Sugarcreek Twp. Bd. of Trustees,* 132 Ohio St.3d 151, 2012-Ohio-2165, 970 N.E.2d 884, ¶ 18, quoting *State ex rel. Cordray v. Midway Motor Sales, Inc.*, 122 Ohio St.3d 234, 2009-Ohio-2610, 910 N.E.2d 432, ¶ 25, citing *Maxfield v. Brooks,* 110 Ohio St. 566, 144 N.E. 725 (1924), paragraph two of the syllabus.

**{¶ 23}** However, "[w]hen the statutory language is plain and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said." *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, citing *Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 553, 721 N.E.2d 1057 (2000). The court must give effect to the words used, making neither additions nor deletions from

words chosen by the General Assembly. *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 19, citing *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97, 573 N.E.2d 77 (1991).

### C. R.C. 3721.24 Is Not Ambiguous

{¶ 24} Defendants argue that R.C. 3721.24 is ambiguous because it does not indicate to whom a report of suspected abuse or neglect must be made and that when R.C. 3721.24 is construed in pari materia with R.C. 3721.22, it is clear that in order to file a retaliatory-discharge claim, a report of suspected abuse or neglect must be made to the director of health. Defendants cite *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrig., Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, in support of its argument that R.C. 3721.24 is ambiguous.

{¶ 25} In *Sheet Metal Workers' Internatl. Assn.,* the issue was whether R.C. 4115.05 requires paying the prevailing wage to an employee "whose work is not performed on the actual project site but who works on materials that will be used in or in connection with the project." *Id.* at ¶ 25. The court found R.C. 4115.05 to be ambiguous on this issue because "[t]here is no reference in R.C. 4115.05 to where the work must be performed, i.e. whether it must be directly on the project cite or be performed off-site." *Id.* at ¶ 29. The court construed "the language of the entire prevailing-wage statutory scheme along with the related regulations" in concluding that the General Assembly did not intend for employers to pay the prevailing wage to persons who do not work on site. *Id.* at ¶ 38. We find *Sheet Metal Workers' Internatl. Assn.* to be distinguishable.

{¶ 26} "[T]he General Assembly, in enacting a statute, is assumed to have been aware of other statutory provisions concerning the subject matter of the enactment even if they are found in separate sections of the Code." *Meeks v. Papadopulos*, 62 Ohio St.2d 187, 191-192, 404 N.E.2d 159 (1980), citing *State ex rel. Darby v. Hadaway*, 113 Ohio St. 658-659, 150 N.E. 36 (1925). And the

General Assembly's use of particular language to modify one part of a statute but not another part demonstrates that the General Assembly knows how to make that modification and has chosen not to make that modification in the latter part of the statute. *See Maggiore v. Kovach*, 101 Ohio St.3d 184, 2004-Ohio-722, 803 N.E.2d 790, ¶ 27; *In re Election of Member of Rock Hill Local School Dist. Bd. of Edn.*, 76 Ohio St.3d 601, 608, 669 N.E.2d 1116 (1996). Finally, we have held that if the General Assembly could have used a particular word in a statute but did not, we will not add that word by judicial fiat. *See In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 26 ("The court must give effect to the words used, making neither additions nor deletions from words chosen by the General Assembly. * * * Certainly, had the General Assembly intended to require that electric-distribution utilities prove that carrying costs were 'necessary' before they could be recovered, it would have chosen words to that effect").

{¶ 27} R.C. 3721.22(A) requires licensed health professionals to report abuse "to the director of health." That same requirement of reporting to the director of health is *not* found in R.C. 3721.24. Because the General Assembly enacted R.C. 3721.22 and 3721.24 in the same bill, we presume that the absence of any requirement in R.C. 3721.24 that a report, or intent to report, suspected abuse or neglect must be made to the director of health was intentional. If the General Assembly had intended to afford protection to only those employees who reported, or indicated an intention to report, suspected abuse or neglect to the director of health, it could have done so by inserting the words "to the director of health" after the word "report" in R.C. 3721.24(A), or by incorporating the requirement from R.C. 3721.22. It did neither. And we will not add those words by judicial fiat. *See Clark v. Scarpelli,* 91 Ohio St.3d 271, 291, 744 N.E.2d 719 (2001) (Cook, J., dissenting) ("the role of a court is not to decide what the

law *should* say; rather, the role of this court is to interpret what the law says *as it has been written by the General Assembly*" [emphasis sic]).

{¶ 28} Furthermore, the different reporting requirements of R.C. 3721.22 and 3721.24 are consistent with their different purposes. In addition to providing immunity from both civil lawsuits and criminal prosecution to persons who report suspected abuse or neglect, R.C. 3721.22 addresses the obligations of reporting suspected abuse or neglect. It explicitly requires that licensed health professionals report suspected abuse or neglect "to the director of health." R.C. 3721.22(A). It also provides that "[a]ny person, including a resident" "may" report suspected abuse or neglect "to the director of health." R.C. 3721.22(B). The purpose of requiring that such reports be made to the director of health is that the director of health has the authority and obligation to investigate, make findings, and report findings of abuse or neglect to law enforcement. *See* R.C. 3721.23.

{¶ 29} In contrast, the purpose of R.C. 3721.24 is to protect persons from retaliatory discharge for reporting suspected abuse or neglect of long-term-care-facility and residential-care-facility residents. *See generally Dolan v. St. Mary's Mem. Home,* 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716 (1st Dist.), ¶ 17 (the purpose of R.C. Chapter 3721 is to protect "the rights of nursing-home residents and of *others who would report violations of those rights*" [emphasis added]). Providing employees broader reporting options than those found in R.C. 3721.22 is consistent with the purpose of preventing retaliation against employees. Employees may be more likely to report suspected abuse or neglect to someone other than the director of health, such as a resident's family member or a coworker.

## IV. Conclusion

{¶ 30} The plain language of R.C. 3721.24 protects employees or other persons used to perform work or services from retaliation for reporting or indicating an intention to report suspected abuse or neglect of residents of long-

term care facilities or residential care facilities and does not require that the report be made to the director of health. Therefore, we answer the certified question in the negative and hold that an employee or other person used to perform work or services who reports or indicates an intention to report suspected abuse or neglect of a long-term-care-facility or residential-care-facility resident is not required to report or indicate an intent to report the suspected abuse or neglect to the Ohio director of health in order to state a claim for retaliatory discharge under R.C. 3721.24.

{¶ 31} In this case, Hulsmeyer's reporting the suspected abuse or neglect to Brookdale and to the resident's children triggered the protection of R.C. 3721.24. Therefore, the court of appeals did not err in reversing the portion of the trial court's judgment that dismissed Hulsmeyer's claim for retaliation under R.C. 3721.24. Because Hulsmeyer has a cognizable retaliatory-discharge claim under R.C. 3721.24, we decline to consider her cross-appeal asserting that she has a common-law wrongful-discharge claim.

{¶ 32} Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court with instructions to reinstate Hulsmeyer's retaliatory-discharge claim under R.C. 3721.24. However, although we have determined that the "report" mentioned in R.C. 3721.24 does not need to be a report to the director of health to trigger protection from retaliation, we make no judgment on the merits of Hulsmeyer's claim. We therefore remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment affirmed
and cause remanded.

O'CONNOR, C.J., and YARBROUGH, LANZINGER, and O'NEILL, JJ., concur.

PFEIFER, J., concurs separately.

FRENCH, J., dissents.

STEPHEN A. YARBROUGH, J., of the Sixth Appellate District, sitting for O'DONNELL, J.

_____

**PFEIFER, J., concurring.**

{¶ 33} I concur in the judgment, syllabus, and almost every other part of the majority opinion. I agree with Justice French, however, that Patricia Hulsmeyer should be allowed to assert a common-law claim for wrongful discharge in violation of public policy. *See Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 7-9.

_____

**FRENCH, J., dissenting.**

{¶ 34} Because I would answer the certified-conflict question in the affirmative, I respectfully dissent.

{¶ 35} In my view, a statutory cause of action under R.C. 3721.24 arises only after an employee or other person used to perform work or services reports or indicates an intention to report suspected abuse or neglect of a resident to the Ohio director of health. Nevertheless, I would adopt the proposition of law raised by Patricia Hulsmeyer's cross-appeal and hold that an employee who reports or indicates an intention to report suspected abuse or neglect of a resident not to the director of health but to another appropriate person, such as the reporter's employer, the long-term care facility or residential care facility, the resident's family, or law enforcement, may assert a common-law claim for wrongful discharge in violation of public policy.

{¶ 36} The General Assembly enacted R.C. 3721.22 to 3721.26 together, as part of a comprehensive scheme governing reports of abuse and neglect of long-term-care-facility or residential-care-facility residents. Am.Sub.H.B. No. 822, 143 Ohio Laws, Part IV, 6652, 6689-6694. As particularly relevant here, R.C. 3721.22, 3721.23, and 3721.24 are interrelated.

{¶ 37} R.C. 3721.22(A) requires a "licensed health professional" to report known or suspected abuse or neglect of a resident to the director of health, whereas R.C. 3721.22(B) permits any other person, including a resident, to report known or suspected abuse or neglect to the director of health. The director of health is, in turn, required to "receive, review, and investigate allegations of abuse or neglect of a resident" and to make findings regarding those allegations. R.C. 3721.23(A). Any person who makes a good-faith report to the director of health under R.C. 3721.22, provides information during the director's investigation under R.C. 3721.23 or participates in a hearing conducted by the director under R.C. 3721.23 is immune from criminal prosecution, damages in a civil action, and professional discipline. R.C. 3721.22(C).

{¶ 38} R.C. 3721.24 provides additional protection for a person who reports suspected abuse or neglect of a resident. R.C. 3721.24(A) prohibits retaliation against an employee or other person used to perform work or services who makes a good-faith report of suspected abuse or neglect of a resident, indicates an intention to make such a report, provides information during an investigation conducted by the director of health under R.C. 3721.23 or participates in a hearing under R.C. 3721.23 or other administrative or judicial proceedings pertaining to the suspected abuse or neglect. R.C. 3721.24(C) establishes a cause of action for harm resulting from prohibited retaliation.

{¶ 39} The crux of this case lies in R.C. 3721.24's silence as to the person to whom a person must report or indicate an intention to report suspected abuse or neglect in order to claim statutory protection from retaliation. Despite the statute's silence on that issue, the majority concludes that R.C. 3721.24 is unambiguous and holds that a plaintiff need not report or indicate an intention to report suspected abuse or neglect to the director of health in order to have a cognizable claim under R.C. 3721.24. In contrast, I conclude that the statute is ambiguous because the silence in R.C. 3721.24(A) regarding the recipient of a

report renders the statute subject to varying interpretations. *Sheet Metal Workers' Internatl. Assn., Local Union No. 33 v. Gene's Refrigeration, Heating & Air Conditioning, Inc.*, 122 Ohio St.3d 248, 2009-Ohio-2747, 910 N.E.2d 444, ¶ 29 (finding ambiguity because R.C. 4115.05 did not specify whether work had to be performed on the construction-project site to be subject to prevailing-wage requirements).

**{¶ 40}** When a statute is ambiguous, we look to the statutory language, the circumstances in which the statute was enacted, legislative history, and the consequences of a particular construction to determine the legislature's intent. *Id.* We also construe statutes pertaining to the same subject matter in pari materia "to discover and carry out legislative intent." *Id.* at ¶ 38, citing *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13. Accordingly, we should read R.C. 3721.24 in pari materia with R.C. 3721.22 and 3721.23, which were enacted at the same time and relate to the same subject matter. *See Sheet Metal Workers' Internatl. Assn.* at ¶ 33-38 (reading R.C. 4115.05 in the context of the entire prevailing-wage statutory scheme and related regulations).

**{¶ 41}** R.C. 3721.22 authorizes, and in some cases mandates, reports of actual or suspected abuse or neglect of residents to the director of health, and R.C. 3721.23 requires the director of health to receive and act upon those reports. R.C. 3721.24 protects from retaliation a person who reports suspected abuse or neglect or who participates in the resultant investigatory and/or adjudicatory process. The Revised Code does not provide for reports of abuse or neglect to recipients other than the director of health. Moreover, the immunity provided by R.C. 3721.22(C) and the prohibition against retaliation established by R.C. 3721.24 arise not only from reports of abuse or neglect, but also from participation in the investigatory process that, pursuant to R.C. 3721.23, results from reports to the director of health. Reading these statutes together, I conclude that a statutory claim under

R.C. 3721.24 requires a report, or an indication of intent to report, to the director of health. *See Arsham-Brenner v. Grande Point Health Care Community*, 8th Dist. Cuyahoga No. 74835, 2000 WL 968790, *6 (July 13, 2000).

{¶ 42} The majority's reading of R.C. 3721.24, in isolation from the related provisions, suggests that there is no limitation whatsoever on the recipient of a report of suspected abuse or neglect. Under the majority's reading, an employee's statutory entitlement to protection from retaliation would extend far beyond the employee's reporting of suspected abuse to obvious and appropriate recipients, like the employee's supervisor or the resident's family. For example, an employee would be entitled to protection upon casually relating suspicions of abuse or neglect to the employee's spouse, a neighbor, a news station or an online message board. In light of the overlap between R.C. 3721.22 through 3721.24, the director of health's statutory responsibility for investigating allegations of resident abuse or neglect, and the silence in R.C. 3721.24, I cannot agree that the General Assembly intended such a broad application.

{¶ 43} Despite my conclusion regarding R.C. 3721.24, I would hold that Hulsmeyer's complaint stated a cognizable common-law claim for wrongful discharge in violation of public policy. A public-policy wrongful-discharge claim requires proof of the following elements: (1) a clear public policy is manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law, (2) dismissing the employee under circumstances like the plaintiff's would jeopardize the public policy, (3) conduct related to the public policy motivated the employer to dismiss the plaintiff, and (4) the employer lacked an overriding legitimate business justification for the dismissal. *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 652 N.E.2d 653 (1995), citing *Painter v. Graley*, 70 Ohio St.3d 377, 384, 639 N.E.2d 51 (1994), fn. 8. The first two elements—the clarity and jeopardy elements—are questions of law for the court. *Id.* at 70.

{¶ 44} Cross-appellees, Brookdale Senior Living, Inc., Hospice of Southwest Ohio, Inc., and Joseph Killian, do not dispute the existence of clear public policy encouraging the reporting of abuse and neglect of long-term-care-facility or residential-care-facility residents and protecting those who make such reports. R.C. 3721.22 and 3721.24 express that clear policy. The General Assembly has also "enunciated a public policy in favor of special protection of nursing-home residents through its passage of the Ohio Nursing Home Patients' Bill of Rights, R.C. 3721.10 et seq." *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 51 (Pfeifer, J., dissenting). As relevant here, a resident is entitled to have any significant change in the resident's health status promptly reported to the resident's sponsor. R.C. 3721.13(A)(32). A "sponsor" is "an adult relative, friend, or guardian of a resident who has an interest or responsibility in the resident's welfare." R.C. 3721.10(D).

{¶ 45} In opposition to Hulsmeyer's cross-appeal, cross-appellees argue only that the absence of a common-law claim does not jeopardize the public policy encouraging the reporting of suspected resident abuse and neglect. First, consistent with their arguments to the trial court and the court of appeals, they argue that R.C. 3721.24 provides a sufficient and appropriate remedy to vindicate the public policy. The court of appeals agreed and held that Hulsmeyer was not entitled to maintain a public-policy wrongful-discharge claim, because she had a remedy by way of a statutory claim under R.C. 3721.24. 2013-Ohio-4147, 998 N.E.2d 517, ¶ 31 (1st Dist.). While an applicable statutory remedy may justify a refusal to recognize a public-policy wrongful-discharge claim, *see Dolan v. St. Mary's Mem. Home*, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716 (1st Dist.), I conclude that R.C. 3721.24 does not provide Hulsmeyer an adequate remedy, because it does not apply to employees, like Hulsmeyer, who report suspicions of resident abuse or neglect to someone other than the director of health.

**{¶ 46}** Cross-appellees also argue, for the first time to this court, that the public policy encouraging reports of abuse and neglect is not jeopardized in the absence of a public-policy wrongful-discharge claim, because, even without a claim under R.C. 3721.24, Hulsmeyer could have reported any reasonable suspicion of abuse or neglect to her employer pursuant to Ohio's Whistleblower Statute, R.C. 4113.52. Review of Hulsmeyer's complaint, however, demonstrates the inapplicability of that statute.

**{¶ 47}** R.C. 4113.52 applies when

> an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution.

R.C. 4113.52(A). But there is no indication in Hulsmeyer's complaint that she suspected a criminal offense that was likely to cause an imminent risk of physical harm, a felony or an improper solicitation for a contribution that her employer had authority to remedy. Rather, Hulsmeyer alleged that she believed the likely cause of the resident's bruising was an excessively tightened bag from a Foley catheter. Furthermore, R.C. 4113.52(D) protects from retaliation an employee who has made a report to her employer or to a prosecuting or regulatory authority, whereas Hulsmeyer alleges that Hospice terminated her for reporting the suspected abuse to Pat Cinquina's family and for allegedly *not* informing Hospice. Accordingly,

the facts as alleged in Hulsmeyer's complaint do not demonstrate the availability of whistle-blower protection under R.C. 4113.52.

{¶ 48} As the trial court decided this case on Civ.R. 12(B)(6) motions to dismiss, the question whether retaliation actually occurred is not ripe for determination, but if Hulsmeyer's allegations of retaliation are true, permitting the alleged retaliation for Hulsmeyer's reporting of suspected abuse or neglect would be contrary to the public policy underlying R.C. 3721.22 and 3721.24, even without a report to the director of health. *See Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 25-27 (retaliatory dismissal of an employee who is injured on the job, but who has not yet instituted a workers' compensation claim, jeopardizes public policy against retaliation in R.C. 4123.90, even though R.C. 4123.90 does not provide a statutory remedy in that situation). And terminating Hulsmeyer for informing Cinquina's family of the suspected abuse would be contrary to the requirement that a resident's sponsor be promptly informed of any change in the resident's medical status and would jeopardize the public policy evident in R.C. 3721.13. For these reasons, I would reverse the court of appeals' judgment and remand the cause to the trial court for reinstatement of Hulsmeyer's common-law wrongful-discharge claim. Accordingly, I respectfully dissent.

_____

Robert A. Klingler Co., L.P.A., Robert A. Klingler, and Brian J. Butler, for appellee and cross-appellant.

Tucker Ellis, L.L.P., Susan M. Audey, and Victoria L. Vance, for appellant and cross-appellee Brookdale Senior Living, Inc.

Dinsmore & Shohl, L.L.P., Michael W. Hawkins, and Faith C. Whittaker, for appellants and cross-appellees Hospice of Southwest Ohio, Inc., and Joseph Killian.

The Gittes Law Group, Fredrick M. Gittes, and Jeffrey P. Vardaro, urging affirmance for amicus curiae Ohio Employment Lawyers Association.

Ohio Disability Rights and Law Center, Inc., Andrew Brennan, Kristen Henry, and Michael Kirkman, urging affirmance for amici curiae Disability Rights Ohio, AARP, National Senior Citizens Law Center, National Law Health Program, and National Disability Rights Network.

_____