DOLAN, Appellant,

v.

ST. MARY'S MEMORIAL HOME et al., Appellees.

[Cite as *Dolan v. St. Mary's Mem. Home*, 153 Ohio App.3d 441, 2003-Ohio-3383.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–020360.

Decided June 27, 2003.

Robert A. Klingler Co., L.P.A., and Robert A. Klingler, for appellant.

Rendigs, Fry, Kiely & Dennis, L.L.P., and Felix J. Gora, for appellees.

DOAN, Presiding Judge.

{¶ 1} Plaintiff-appellant, Nancy J. Dolan, filed a complaint raising numerous causes of action against defendants-appellees, St. Mary's Memorial Home, Society of the Transfiguration, and Sister Rachel Phillips. The trial court granted summary judgment against Dolan on all her claims. She has appealed that judgment only as to her claims for wrongful/retaliatory discharge and promissory estoppel.

{¶ 2} Dolan was the director of nursing at St. Mary's, a licensed nursing home. The Society of the Transfiguration was an Episcopal religious community that owned and operated St. Mary's. Sister Rachel Phillips was the administrator of St. Mary's and Dolan's direct supervisor.

{¶ 3} Dolan was discharged from her employment as director of nursing at St. Mary's for insubordination. The appellees presented evidence that Dolan had contacted the family of a resident without first informing Sister Rachel, in violation of St. Mary's policy. When Sister Rachel confronted Dolan about this alleged violation, Dolan acknowledged calling the family. Sister Rachel said that she would give Dolan "one more chance" if she would promise never to contact a resident's family without her permission. Dolan responded that she did not think that it was a reasonable or appropriate promise to make and that she could not keep the promise because there were too many times that she needed to talk to

residents' families. Sister Rachel then told Dolan that her employment was terminated. Sister Ann Margaret, Sister Rachel's superior in the Society of the Transfiguration, confirmed to Dolan that she was being discharged from her employment at St. Mary's.

{¶ 4} Dolan presented evidence that the policy that she had allegedly violated had never been enforced. She testified that she had contacted the families of residents on numerous occasions without first contacting Sister Rachel because Sister Rachel had no medical training and many residents and their family members were not comfortable with Sister Rachel. Dolan believed that it was her ethical duty as a nurse to keep the residents' families informed of the residents' conditions. Further, other employees of the nursing home had often found it necessary to contact residents' families without first informing Sister Rachel and had done so without any adverse consequences.

{¶ 5} Dolan also presented evidence that Sister Rachel was verbally and emotionally abusive to the residents and that the residents feared retaliation if they complained. Consequently, Dolan had reported her conduct to Pro Seniors, an advocacy group dedicated to protecting the rights of senior citizens, and ultimately to the Ohio Department of Health. Subsequently, investigators came to St. Mary's and concluded that the residents' rights had been violated.

{¶ 6} Sister Rachel was incensed upon learning of the complaints and began interrogating staff members to find out who had complained. Dolan met with Sister Ann, who was aware of the problems with Sister Rachel's behavior. Dolan told Sister Ann that she had expressed her concern about Sister Rachel's treatment of residents and staff to the investigators. Sister Ann suggested that she and Dolan meet with Sister Rachel to discuss the issues with her. Dolan was reluctant, but Sister Ann told her of the need for honesty and assured her that she would not suffer any retaliation.

{¶ 7} The meeting occurred a short time later, and Dolan expressed her concerns about Sister Rachel's behavior and about the complaints that she had received from residents and staff about that behavior. Sister Rachel became angry at the meeting and attempted to place the blame on residents and staff for complaining. Following the meeting, Sister Rachel confronted Dolan regarding her "accusations," but Dolan told her that she could not talk at that time because of her duties. A few weeks later, the incident in which Dolan contacted the resident's family without informing Sister Rachel occurred, and Sister Rachel told her, "That's just one more thing you've done," before insisting that she promise not to contact the residents' families and subsequently firing her.

{¶ 8} In this appeal, Dolan presents two assignments of error for review. In her first assignment of error, she states that the trial court erred in granting

summary judgment in favor of the appellees on her claim for wrongful discharge. She argues that she presented evidence from which reasonable minds could conclude that the appellees had fired her for reporting Sister Rachel's abusive behavior, in violation of a clear public policy that encourages the reporting of patient abuse at nursing homes, and that the alleged reason for her discharge was pretextual. We find this assignment of error to be well taken, although not precisely for the reasons Dolan has argued.

██ ██ {¶ 9} To set forth a claim of wrongful discharge in violation of public policy, an employee must allege facts demonstrating that the employer's act of discharging the employee violated a "clear public policy." *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph two of the syllabus. The Ohio Supreme Court has adopted an analysis involving four elements in a wrongful-discharge case. The first two elements are (1) that a clear public policy existed and was manifested in a state or federal constitution, in a statute or administrative regulation, or in the common law (the clarity element); and (2) that dismissing employees under circumstances involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element). These two elements involve questions of law. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653; *Chapman v. Adia Services, Inc.* (1997), 116 Ohio App.3d 534, 541–542, 688 N.E.2d 604.

{¶ 10} Dolan contends that a clear public policy is embodied in R.C. 3721.10 through R.C. 3721.17, commonly known as the nursing home patients' bill of rights. See *Elder v. Fischer* (1998), 129 Ohio App.3d 209, 220, 717 N.E.2d 730; *Belinky v. Drake Ctr., Inc.* (1996), 117 Ohio App.3d 497, 503, 690 N.E.2d 1302. These statutes provide that nursing home residents have the right to be free from abuse and to be treated with courtesy and respect. They provide remedies and procedures for those whose rights have been violated and prevent retaliation against those who report a violation of a resident's rights. Dolan contends that these statutes manifest a clear public policy that encourages the reporting of patient abuse and the protection of those who participate in the reporting of such abuse. We agree.

{¶ 11} It is the second prong of the test, the jeopardy element, that presents a problem in this case. In arguing that her termination jeopardized the public policy set forth in the patients' bill of rights, Dolan relies upon *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 677 N.E.2d 308. In that case, the Ohio Supreme Court held that Ohio's whistleblower statute, R.C. 4113.52, does not preempt a common-law cause of action against an employer who discharges or disciplines an employee in violation of that statute, and that the remedies available under R.C. 4113.52 for violations of that statute and the

remedies available for the tort of wrongful discharge are cumulative. Id., paragraphs two and four of the syllabus.

{¶ 12} The Ohio Supreme Court distinguished *Kulch* and cautioned against reading it broadly in *Wiles v. Medina Auto Parts,* 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 18–19. In that case, the plaintiff contended that he was wrongfully discharged for exercising his rights under the Family and Medical Leave Act, Section 2601 et seq., Title 19, U.S.Code. While the court agreed that the FMLA expressed a clear public policy in favor of allowing an employee to take medical leave, it held that the jeopardy element was not satisfied.

{¶ 13} In analyzing this element, the court stated, "An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim. * * * Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right *and* remedies for its breach, 'the issue of adequacy of remedies' becomes a particularly important component of the jeopardy analysis." (Emphasis sic; citations omitted.) Id. at ¶ 15. It went on to state, "Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. * * * In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." (Citations omitted.) Id.

{¶ 14} The court held that the FMLA contained a comprehensive remedial scheme that "provides an employee with a meaningful opportunity to place himself or herself in the same position the employee would have been absent the employer's violation of the FMLA." Id. at ¶ 17. Thus, an adequate remedy existed, and, therefore, the court refused to recognize a cause of action for wrongful discharge in violation of public policy based solely on a discharge in violation of the FMLA.

{¶ 15} Dolan relies upon R.C. 3721.17(G), which provides for a fine of up to $1,000 if a nursing home or its employee retaliates against an individual exercising the rights set forth in R.C. 3721.10 to 3721.17. This statute does not provide an adequate remedy and would be inadequate to meet the jeopardy element.

{¶ 16} But R.C. 3721.22(A) requires a licensed health professional to report suspected abuse of nursing-home residents to the Ohio Director of Health. R.C. 3721.24(A) provides that "[n]o person or government entity shall retaliate against an employee * * * who, in good faith, makes a report of suspected abuse or neglect of a resident * * *." R.C. 3721.24(C) provides that "[a]ny person has a

cause of action against any person or government entity for harm resulting from violation of division (A) * * *." If a court finds that a violation has occurred, it may order injunctive relief and award damages, court costs, and reasonable attorney fees.

{¶ 17} Following the reasoning of *Wiles*, Dolan has a statutory remedy that adequately protects society's interests. The public policy embodied in R.C. Chapter 3721 of protecting the rights of nursing-home residents and of others who would report violations of those rights would not be jeopardized in the absence of a common-law wrongful-discharge tort. Consequently, Dolan may not recover in a wrongful-discharge action when the public policy is based on the reporting of abuse in a nursing home. Her remedy lies in an action for retaliatory discharge pursuant to R.C. 3721.24.

{¶ 18} Dolan has appealed the trial court's decision granting summary judgment against her on the fifth count of her complaint. That count contained a claim both for wrongful discharge in violation of public policy and for retaliatory discharge under R.C. Chapter 3721. Our review of the record shows that Dolan sufficiently pleaded and argued the issue of retaliatory discharge so that it is now properly before us.

{¶ 19} To establish a prima facie case for retaliatory discharge under R.C. 3721.24, the employee must show the following: (1) the employee engaged in a protected activity; (2) the employee was the subject of adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. To meet this test, the employee must show that the activity was protected, that the employer knew about the activity, and that the alleged retaliation followed closely in time to the protected activity. *Hoeffel v. Henry Cty. Bd. of Commrs.* (Sept. 16, 1996), 3d Dist. No. 7–95–9, 1996 WL 518115, citing *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 677, 622 N.E.2d 1130.

{¶ 20} If the employee meets his or her burden to show these elements, the burden shifts to the employer to show that the reason for the discharge was legitimate. If the employer can establish a legitimate reason, the burden shifts back to the employee to show that the employer's articulated reason was pretextual. Id. To avoid summary judgment, the employee must present some evidence that the employer's proffered reason was untrue. *Surry v. Cuyahoga Comm. College*, 149 Ohio App.3d 528, 2002-Ohio-5356, 778 N.E.2d 91, at ¶ 24 and ¶ 29.

{¶ 21} Dolan presented evidence showing that she had reported Sister Rachel's patient abuse to Pro Seniors and ultimately to the Department of Health. Sister Rachel knew about Dolan's involvement with the investigation following the

meeting between Dolan, Sister Rachel, and Sister Ann. Dolan suffered an adverse employment action shortly after that meeting.

{¶ 22} Dolan also presented evidence tending to show that the reason for her firing, insubordination for refusing to promise Sister Rachel that she would never contact a family member without first contacting Sister Rachel, was a pretext and that the real motivation for her firing was her report regarding patient abuse. Her evidence showed that Sister Rachel was angry about the investigation and sought to punish whoever had made the report. She even went so far as to cut the hours of another employee she had previously thought was the culprit. After the meeting between Sister Rachel, Sister Ann, and Dolan, Sister Rachel was angry and told Dolan, "You will talk to me about these accusations."

{¶ 23} Further, the policy on which Sister Rachel relied in discharging Dolan was not in writing. Dolan and other employees of St. Mary's stated that they had never heard of this policy, that they had often contacted members of residents' families without Sister Rachel's knowledge, and that they were not subjected to adverse action. Dolan presented the affidavit of an expert with 15 years of experience in nursing-home administration. The expert stated that he had never heard of a similar policy and that such a policy would prevent nurses from doing their jobs properly and could even be dangerous. He described St. Mary's policy as "irrational and ill-founded" and stated that it was improper for an administrator to ask a director of nursing to promise never to contact a resident's family without first contacting the administrator.

{¶ 24} Consequently, we hold that genuine issues of fact existed as to whether the appellees' reason for Dolan's discharge was pretextual and whether Dolan was discharged in retaliation for reporting patient abuse. Reasonable minds could reach different conclusions on those issues, and the appellees were not entitled to judgment as a matter of law. See *Doan v. Southern Ohio Administrative Dist. Counsel, Internatl. Union of Bricklayers & Allied Craftworkers* (2001), 145 Ohio App.3d 482, 488–489, 763 N.E.2d 639; *Hoeffel,* supra. Therefore, the trial court erred in granting summary judgment in their favor on the issue of retaliatory discharge. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293–294, 662 N.E.2d 264; *Stinespring v. Natorp Garden Stores, Inc.* (1998), 127 Ohio App.3d 213, 215–216, 711 N.E.2d 1104. Accordingly, we sustain Dolan's first assignment of error, and we reverse that part of the trial court's decision granting summary judgment in favor of the appellees on the fifth count of Dolan's complaint.

{¶ 25} In her second assignment of error, Dolan states that the trial court erred in granting summary judgment in favor of the appellees on her claim of promissory estoppel. She contends that the evidence showed that she had relied

to her detriment on Sister Ann's promise of protection from retaliation. This assignment of error is well taken.

{¶ 26} Under the doctrine of promissory estoppel, an employer may be prevented from discharging an employee if the employer has made promises upon which an employee has reasonably relied. *Trader v. People Working Cooperatively, Inc.* (1994), 104 Ohio App.3d 690, 695, 663 N.E.2d 335; *Lehmann v. AAA Cincinnati* (Mar. 26, 1999), 1st Dist. No. C–980163, 1999 WL 162151. The test is whether the employer should have reasonably expected its representation to be relied upon by its employee, and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee. *Mers v. Dispatch Printing Co.* (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph three of the syllabus. Praise regarding job performance or discussion of future career development are insufficient to establish promissory estoppel. The statement must be a specific promise of continued employment. *Helmick v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St.3d 131, 543 N.E.2d 1212, paragraph three of the syllabus; *Trader*, supra, 104 Ohio App.3d at 695, 663 N.E.2d 335.

{¶ 27} Sister Ann acknowledged that she had promised Dolan that she would not allow Sister Rachel to retaliate against her for speaking openly in a meeting to discuss issues raised by the investigation. Dolan was reluctant to speak but agreed to do so because of Sister Ann's promise. Shortly after the meeting, Sister Rachel fired Dolan. Dolan called Sister Ann and reminded her of her promise to protect her. Sister Ann told her that she was sorry and that she would look into the matter. A short time later, Sister Ann called and confirmed that Dolan was discharged.

{¶ 28} Thus, Dolan presented evidence of a specific promise on which she had relied in speaking freely in front of Sister Rachel. Consequently, genuine issues of fact existed on the issue of promissory estoppel. Reasonable minds could reach different conclusions on that issue, and the appellees were not entitled to judgment as a matter of law. Accordingly, the trial court erred in granting the appellees' motion for summary judgment on the seventh count of Dolan's complaint, and we sustain Dolan's second assignment of error. See *Dresher*, supra, 15 Ohio St.3d at 293–295, 662 N.E.2d 264; *Helmick*, supra, 45 Ohio St.3d at 136–137, 543 N.E.2d 1212; *Stinespring*, supra, 127 Ohio App.3d at 215–216, 711 N.E.2d 1104.

{¶ 29} In sum, we reverse that part of the trial court's summary judgment entered in favor of the appellees on Dolan's claims for retaliatory discharge and promissory estoppel. Since she has not raised any assignments of error related to the summary judgment granted in favor of the appellees on her other five

claims, we affirm the trial court's judgment in all other respects.   We remand this case for further proceedings consistent with this decision.

Judgment affirmed in part,
reversed in part
and cause remanded.

HILDEBRANDT and GORMAN, JJ., concur.