JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
Plaintiff-appellant, Tawnya McMahan, filed suit against her former employer, defendant appellee Coca-Cola Enterprises, Inc. She set forth causes of action for assault and wrongful discharge in violation of public policy. The trial court granted summary judgment in favor of Coca-Cola. We affirm the trial court's judgment.
The record shows that McMahan worked for Coca-Cola as an occupational health nurse, and that part of her duties included administering workers' compensation claims. One claim that she handled was for James Brown. Brown became frustrated with the progress of his claim. Though he did not appear hostile at a meeting with McMahan in August 2000, he apparently blamed McMahan for the delays in resolving the claim.
On August 30, 2003, McMahan received a call from Dave Welcher, a psychologist treating Brown. He told her that Brown had made a threat on her life. Specifically, Brown had stated that he was going to "choke the life out of her." Brown had indicated that he might carry out his threat at a scheduled union meeting.
McMahan acknowledged that Coca-Cola took the threat seriously. Her supervisor was not available, so she reported the threat to Tina Gallagher, in Coca-Cola's human resources department. Gallagher then immediately called Terry Vannarsdale, the security manager, who came and met with them. Vannarsdale and Gallagher discussed the appropriate response to the situation.
Coca-Cola provided private security at McMahan's home for several weeks. It also arranged for surveillance on Brown for several days to watch his movements. It also hired an independent psychiatrist to evaluate Brown, but the psychiatrist concluded that Brown was remorseful for his actions and that he was no longer a threat.
McMahan was upset the day she learned of the threat. She went home early and did not return to work for several weeks. She was anxious and afraid for her safety. She attempted to return to work in September 2000, but suffered a panic attack. Subsequently, she began seeing a psychologist, who diagnosed her with severe depression and post-traumatic stress disorder. This led to her being placed on medical leave.
Brown was never disciplined for the threat and eventually returned to work. In December 2000, McMahan had a meeting with Shari Bluer, her supervisor, and Thomasina Kennedy, Coca-Cola's human resources director, about returning to work. McMahan told them that, based on her doctor's advice, she could not return to work. She was extremely concerned about seeing Brown, despite the fact that she worked in a separate, secured building. They told her that she would not have to be alone with Brown, but that she would probably have to see him when she led training sessions that all employees were required to attend.
McMahan refused to return to work as long as Brown continued to work for Coca-Cola. She continued her medical leave of absence until September 6, 2001. On that date, Coca-Cola terminated her employment pursuant to a policy that required the discharge of employees that were away from their job for more than one year.
In her sole assignment of error, McMahan now states that the trial court erred in granting Coca-Cola's motion for summary judgment. First, she contends that material issues of fact exist concerning whether Brown's conduct constituted civil assault and whether Coca-Cola ratified Brown's conduct.
We note that even though McMahan named Brown as a defendant in this case, she never attempted to serve the complaint on him, and he never appeared in the action. Therefore, Brown's conduct is only relevant to the extent that Coca-Cola ratified it. We assume, for argument's sake, that Brown's conduct constituted a civil assault. See Smith v. John Deere Co. (1993),83 Ohio App.3d 398, 614 N.E.2d 1148; Schweller v. Schweller (Dec. 26, 1997), 1st Dist. Nos. C-970183 and C-970191.
McMahan does not argue, and the record does not show, that Brown was acting within the scope of his employment when he made the threat against her. Consequently, Coca-Cola could only be liable for the assault if it ratified Brown's conduct. See Fulwiler v. Schneider (1995), 104 Ohio App.3d 398,662 N.E.2d 82; Fisher v. Hering (1948), 88 Ohio App. 107,97 N.E.2d 553; Blaser v. BW-3 (May 19, 1999), 9th Dist. No. 98CA007054. Ratification generally occurs when the employer, with full knowledge of the facts, acts in a manner that manifests an intention to approve the unauthorized act of its employee. Davisv. The May Department Stores, Inc., 9th Dist. No. 20396, 2001-Ohio-1362. "In order to constitute one a wrongdoer by ratification, the original act must have been done, or intended to be done in his interest; otherwise, the animus of the wrongdoer cannot be imputed to him." Fisher, supra, quotingDillingham v. Anthony (1889), 73 Tex. 47, 11 S.W. 139.
McMahan argues that Coca-Cola never disciplined Brown or even questioned him about his conduct. But this court has held that the continued employment of an individual who has committed an intentional tort is not, by itself, enough to show ratification by an employer. Fulwiler, supra. Accord Fisher, supra;Blazer, supra. But, see, Carney v. Knollwood Cemetery Assn.
(1986), 33 Ohio App.3d 31, 514 N.E.2d 430.
McMahan presented no other evidence showing that Coca-Cola ratified Brown's conduct. Nothing in the record shows that Brown, in committing the assault, was acting to further Coca-Cola's interest. To the contrary, according to McMahan, Coca-Cola did not want him to return to work, and he was angry because he could not. The threat was not made in the workplace, and Brown was on medical leave at the time of the alleged assault. In contrast, in the cases on which McMahan relies, the employees were involved in work-related duties when they committed actionable torts. SeeFulwiler, supra; Carney, supra; Davis, supra.
Further, this is not a case where the employer did nothing to protect the victim of the intentional tort. See Wells v. Bowie
(1993), 87 Ohio App.3d 730, 622 N.E.2d 1170. Coca-Cola provided McMahan with security for several weeks at substantial cost. It arranged for surveillance on Brown for several days, to watch his movements, and hired a psychiatrist to assess Brown's mental state. McMahan's supervisors assured her that she would not have to be alone with Brown.
We find no issues of material fact. Construing the evidence most strongly in McMahan's favor, we hold that reasonable minds could come to but one conclusion — that Coca-Cola did not ratify Brown's conduct. Coca-Cola was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor on McMahan's assault claim. See Dresher v.Burt (1996), 75 Ohio St.3d 280, 662 N.E.2d 264; Stinespring v.Natorp Garden Stores, Inc. (1998), 127 Ohio App.3d 213,711 N.E.2d 1104.
Finally, we note that McMahan relies upon Kerans v. PorterPaint Co. (1991), 61 Ohio St.3d 486, 575 N.E.2d 428, which is distinguishable from the present case. Further, cases subsequent to Kerans have limited it to its own facts. Browning v. OhioState Highway Patrol, 151 Ohio App.3d 798, 2003-Ohio-1108,786 N.E.2d 94; Myers v. Goodwill Industries of Akron, Inc. (1998),130 Ohio App.3d 722, 721 N.E.2d 130. We, therefore, do not findKerans to be dispositive.
Next, McMahan argues that the trial court erred in granting summary judgment in favor of Coca-Cola on her wrongful-discharge claim. She contends that material issues of fact exist as to whether her discharge jeopardized a clear public policy requiring employers to provide a safe workplace for their employees.
To set forth a claim of wrongful discharge in violation of public policy, an employee must allege facts demonstrating that the employer's discharge of the employee violated a "clear public policy." Painter v. Graley (1994), 70 Ohio St.3d 377,639 N.E.2d 51; Dolan v. St. Mary's Memorial Home,153 Ohio App.3d 441,2003-Ohio-3383,794 N.E.2d 716. The Ohio Supreme Court has adopted a test involving four elements for use in determining whether a discharge violated public policy. The first two elements are (1) that a clear public policy existed and was clearly manifested (the clarity element), and (2) that dismissing employees under circumstances involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element). These two elements involve questions of law. Collinsv. Rizkana (1995), 73 Ohio St.3d 65, 652 N.E.2d 653; Dolan,
supra.
Ohio undoubtedly has a public policy embodied as R.C. 4101.11
and 4101.12 that requires employers to provide a safe workplace.Pytlinski v. Brocar Products, Inc., 94 Ohio St.3d 77,2002-Ohio-66, 760 N.E.2d 385; Blair v. Honda of America Mfg.,Inc., 3rd Dist. No. 14-01-33, 2002-Ohio-1065. Therefore, the clarify element was satisfied in this case.
But McMahan failed to show that her discharge violated the jeopardy element. Coca-Cola terminated McMahan's employment based on its policy requiring the discharge of employees who had not been on the job in more than a year. McMahan contends that her absence for over a year was based on Coca-Cola's failure to provide her with a safe workplace. Therefore, she reasons, her dismissal jeopardized the public policy.
Nothing in the record shows that McMahan's workplace was unsafe. Though she believed it was unsafe, she acknowledged that no doctor, therapist or other independent witness could corroborate her belief. She also acknowledged that nothing occurred after the initial threat to make her feel unsafe, and that she had never seen Brown after that time. This case stands in contrast to Blair, supra, cited by McMahan. In that case, the employee's medical condition had been confirmed by her doctor. Her employer knew with certainty that it was unsafe for the employee to work in certain areas of the plant. Yet it required her to do so anyway and then fired her for her absences due to medical causes.
Further, the evidence shows that Coca-Cola took reasonable security measures to ensure McMahan's safety. McMahan stated numerous times that she wanted Coca-Cola to guarantee her safety. The law did not require such a guarantee. See Davenport v. M/ISchottenstein Homes, Inc. (1993), 96 Ohio App.3d 237,644 N.E.2d 1074.
This case is similar to Carter v. Elano Corp., 2nd Dist. No. 2002CA31, 2002-Ohio-6857. In that case, the employee reported to his supervisor that two other employees had brought firearms onto the employer's premises. Those two employees were discharged as a result of that incident. The employer then assured the informant employee that his name would not be released. Nevertheless, his role in the incident became public knowledge. He became involved in a confrontation with an associate of the fired employees that he perceived as threatening. He also stated that he felt ostracized and isolated.
Subsequently, the employee asked for and received a medical leave of absence. During that time, he received no further threats. The employer offered to transfer him to another shift, but he refused. He did not return to work and was later discharged for his absences.
The court held that the employee's wrongful-termination argument was based on a claim of constructive discharge. An individual is constructively discharged when his employer's actions have made his working conditions so intolerable that a reasonable person under the circumstances would feel compelled to resign. Mauzy v. Kelly Services, Inc., 75 Ohio St.3d 578,1996-Ohio-265, 664 N.E.2d 1272. The Carter court held that neither the confrontation with the other employee nor the employee's feeling that he was ostracized was sufficient to demonstrate that his working conditions were so intolerable that he would reasonably have felt compelled to resign.
Similarly, McMahan refused in this case to return to work despite knowledge that her supervisors wanted her to return, and that Coca-Cola had a policy requiring discharge after a year. Thus, the issue was one of constructive discharge, despite McMahan's protests to the contrary. The record does not show that her refusal after several months to return to work based upon her continued fear and her wish that Coca-Cola would guarantee her safety was reasonable. Her workplace conditions were not so intolerable that a reasonable person would have felt compelled to resign, which was essentially what McMahan did by refusing to return to work. Part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too quickly. An employee's perception that he or she was forced to resign must be judged without consideration of his or her undue sensitivities. Mayo v. Kenwood Country Club, Inc.
(1999), 134 Ohio App.3d 336, 731 N.E.2d 190; Bowers v. HamiltonCity School Dist. Bd. of Ed., 12th Dist. No. CA2001-07-160, 2002-Ohio-1343.
We find no issues of material fact. Construing the evidence most strongly in McMahan's favor, we hold that reasonable minds could come to but one conclusion — that McMahan's discharge did not jeopardize the public policy requiring Ohio employers to provide a safe workplace. Coca-Cola was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in its favor on McMahan's wrongful-discharge claim. See Dresher, supra; Stinespring, supra. Consequently, we overrule McMahan's assignment of error and affirm the trial court's judgment.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt and Painter, JJ.