[Cite as *Shingler v. Provider Services Holdings, L.L.C.*, 2018-Ohio-2740.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 106383

---

**CINDY SHINGLER**

PLAINTIFF-APPELLANT

vs.

**PROVIDER SERVICES HOLDINGS, L.L.C., ET AL.**

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-16-869891

**BEFORE:** E.A. Gallagher, A.J., Kilbane, J., and McCormack, J.

**RELEASED AND JOURNALIZED:** July 12, 2018

**ATTORNEYS FOR APPELLANTS**

Kimberly C. Young
Marilena Disivio
Elk & Elk Co., Ltd.
6105 Parkland Boulevard, Suite 200
Mayfield Heights, Ohio 44124


**ATTORNEYS FOR APPELLEES**

Susan M. Audey
Ernest W. Auciello
Tucker Ellis L.L.P.
950 Main Avenue, Suite 1100
Cleveland, Ohio 44113

Eric B. Hershberger
862 Bluffview Drive
Columbus, Ohio 43235

EILEEN A. GALLAGHER, A.J.:

**{¶1}** Plaintiff-appellant Cindy Shingler appeals from the trial court's order dismissing her complaint against defendants-appellees Provider Services Holdings, L.L.C. ("Provider Services") and Lafayette Point Nursing and Rehabilitation Center ("Lafayette") (collectively, "appellees") with prejudice for failure to state a claim for which relief could be granted. Shingler asserts that because she failed to comply with the requirements for bringing a wrongful discharge claim under Ohio's whistleblower statute, R.C. 4113.52, she has no adequate statutory remedy and is, therefore, entitled, as a matter of law, to bring a common-law claim for wrongful discharge in violation of public policy after she was allegedly discharged for reporting violations of the Nurse Practice Act, codified in R.C. Chapter 4723, to the Ohio Board of Nursing. For the reasons that follow, we affirm the trial court's judgment.

**Factual and Procedural Background**[1]

**{¶2}** From 2008 to August 8, 2012, Shingler was employed by Provider Services, serving as a director of nursing at Lafayette. On July 30, 2012, a nursing assistant who Shingler supervised informed her that another Lafayette employee, Brenda Burdett, who was not a licensed nurse or certified nursing assistant, was engaging in unauthorized patient care. Shingler informed her supervisor, Jeff Grewell, of these reports.

**{¶3}** The following day, Shingler received two additional reports that Burdett was engaging in unauthorized patient care. Shingler once again informed Grewell of these reports. Shingler claims that, in response to these reports, Grewell told her: "Cindy, you will be the one to

---

[1] The facts set forth above are based on the allegations of Shingler's complaint.

go, not Brenda." On August 2, 2012, Shingler contacted the Ohio Board of Nursing and reported that nursing functions were being performed by unlicensed personnel at Lafayette.

{¶4} On August 3, 2012, Shingler met with four of appellees' representatives to discuss her allegations. She was instructed to turn over all materials she had relating to her investigation of the unlicensed practice of nursing at Lafayette. After the meeting concluded, Shingler was placed on administrative leave. Shingler attended a second meeting on August 8, 2012. Shingler claims that, at that meeting, she was forced to sign a separation agreement terminating her employment with appellees.

{¶5} On October 3, 2016, Shingler filed the instant action against appellees in the Cuyahoga County Court of Common Pleas, asserting a claim for wrongful discharge in violation of public policy.[2] Shingler alleged that her termination was "in direct retaliation" for her report to the Ohio Board of Nursing. She further alleged that her termination violates the "clear public policy" expressed in R.C. 4723.03 and 4723.341 and "other applicable administrative rules" "against retaliatory action on the part of employers against employees who report unlicensed individuals engaging in the practice of nursing in the state of Ohio to the Board of Nursing." Shingler sought to recover an unspecified sum as and for front pay, back wages, loss of employment opportunity, future earnings, lost pension, loss of insurance and other fringe benefits, adverse health effects, humiliation, embarrassment, loss of reputation, loss of self esteem, attorney fees and costs.

---

[2] This is a refiled action. On April 22, 2013, Shingler filed her original complaint against appellees in the Cuyahoga County Court of Common Pleas, asserting a claim for wrongful discharge in violation of public policy. In July 2013, the trial court granted appellees' motion to transfer the case to the Coshocton County Common Pleas Court. Shingler voluntarily dismissed her complaint without prejudice on September 27, 2016.

**{¶6}** On November 16, 2016, appellees filed a motion to transfer venue, requesting that the case be transferred to the Coshocton County Court of Common Pleas.[3] The trial court denied the motion.

**{¶7}** Appellees filed an answer denying the material allegations of the complaint and asserting various affirmative defenses, including failure to state a claim for which relief can be granted and Shingler's failure to "strictly comply with the requirements of any applicable and actionable whistleblower or anti-retaliation statute or provision." In July 2017, the trial court granted appellees leave to file a combined motion to dismiss and for judgment on the pleadings pursuant to Civ.R. 12(B)(6) and 12(C). Appellees argued that Shingler's complaint failed to state a claim for which relief could be granted because: (1) Shingler could not satisfy the "jeopardy element" of her common-law wrongful discharge in violation of public policy claim (also referred to as a *"Greeley*[4] claim"*) because R.C. Chapter 4723 provided adequate protections against retaliatory discharge stemming from reports to the Ohio Board of Nursing and (2) to the extent Shingler attempted to assert a claim for retaliatory discharge under R.C. 4723.341(C), her claim was barred for failure to comply with the whistleblower statute, R.C. 4113.52.

**{¶8}** Shingler opposed the motion, arguing that (1) appellees' motion to dismiss was not timely filed and must be analyzed as a motion for judgment on the pleadings and (2) her complaint pled a cognizable common-law claim for wrongful discharge in violation of public policy because no remedy was available to her under Ohio's whistleblower statute since she did

---

[3] Appellees sought to transfer the case on the grounds that Lafayette was located in West Lafayette in Coshocton County, Ohio and the court had previously granted a motion to transfer venue to that court in the originally filed action. Shingler opposed the motion on the ground that Provider Services' principal place of business is in North Olmsted in Cuyahoga County, Ohio.

[4] *Greeley v. Miami Valley Maint. Contrs., Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990).

not file a written report. Shingler asserted that her claim for wrongful discharge in violation of public policy was based on violations of R.C. Chapter 3734, R.C. 4101.11, 4101.12, 4723.03 and 4723.341(C), 29 C.F.R. 24.102, 29 C.F.R. 1910.120 and "other state and/or federal statutes, administrative rules, regulations and constitutions."

{¶9} On September 17, 2018, the trial court granted appellees' motion and dismissed Shingler's complaint with prejudice. Citing this court's decision in *Davidson v. B.P. Am.* 125 Ohio App.3d 643, 709 N.E.2d 510 (8th Dist.1997), and the language of R.C. 4723.341(C), the trial court concluded that "[s]ection 4723.341(C) of the Nurs[e] Practice Act clearly directs plaintiff that she has 'duties' under R.C. § 4113.52 to follow in order to be accorded the protections under the Whistleblower statute" and that because "[p]laintiff chose not to do so," she could not bring a common-law claim for wrongful discharge in violation of public policy.

{¶10} Shingler appealed, raising the following two assignments of error for review:

I.   The trial court erred in granting defendants' motion to dismiss plaintiff's claim for termination in violation of public policy where no other remedy was available to plaintiff for her wrongful termination.

II.  The trial court erred in granting defendants' motion to dismiss plaintiff's case for failure to state a claim after defendants demonstrated clear waiver of that defense.

**Law and Analysis**

**Waiver of Failure to State a Claim Defense**

{¶11} For ease of discussion, we address Shingler's second assignment of error first. In her second assignment of error, Shingler argues that appellees waived their defense of failure to

state a claim for which relief can be granted because (1) the defense was not raised in appellees' pre-answer motion to transfer venue pursuant to Civ.R. 12(B)(2), (2) the parties "stipulated," in two joint motions they filed to extend the discovery schedule, that "[d]ispositive motions are not expected to be filed," and (3) the trial court stated, in its June 20, 2017 journal entry granting the parties' second joint motion for modification of the discovery schedule that "[n]o dispositive motions shall be filed." Shingler's argument is meritless.

{¶12} Civ.R. 12(B) provides, in relevant part:

How presented. Every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (3) improper venue, * * * (6) failure to state a claim upon which relief can be granted * * *. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. * * *

{¶13} Civ.R. 12(G) further provides:

Consolidation of defenses and objections. A party who makes a motion under this rule must join with it the other motions herein provided for and then available to him. If a party makes a motion under this rule and does not include therein all defenses and objections then available to him which this rule permits to be raised by motion, he shall not thereafter assert by motion or responsive pleading, any of the defenses or objections so omitted, *except as provided in subdivision (H) of this rule*.

(Emphasis added.)

{¶14} Civ.R. 12(H)(2), permits "[a] defense of failure to state a claim upon which relief can be granted * * * [to] be made in any pleading permitted or ordered under Rule 7(A), or by motion for judgment on the pleadings, or at the trial on the merits." In this case, appellees raised the defense of failure to state a claim for which relief could be granted in their answer and then filed a combined motion to dismiss and a motion for judgment on the pleadings with leave of court. Even if appellees' Civ.R. 12(B)(6) motion to dismiss was untimely under Civ.R.

12(G), under Civ.R. 12(H), appellees could still raise the defense of failure to state a claim for which relief can be granted in their answer, by motion for judgment on the pleadings or at trial. S*ee, e.g., Koltcz v. Alchem Corp.*, 8th Dist. Cuyahoga No. 59205, 1991 Ohio App. LEXIS 5375, 2-4 (Nov. 7, 1991); *Wiles v. Medina Auto Parts*, 9th Dist. Medina No. 3131-M, 2001 Ohio App. LEXIS 2499, 19, fn. 4 (June 6, 2001), *aff'd*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526. Accordingly, appellees did not waive the defense of failure to state a claim by filing a motion to transfer venue and then raising the defense in their answer and filing a motion for judgment on the pleadings.

{¶15} Under Civ.R. 12(C), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The progress of proceedings and the manner in which a trial court controls its own docket are matters within the discretion of the trial court. *See, e.g., JP Morgan Chase Bank v. Stevens*, 8th Dist. Cuyahoga No. 104835, 2017-Ohio-7165, ¶ 17; *Bayview Loan Servicing, L.L.C. v. St. Cyr*, 8th Dist. Cuyahoga No. 104655, 2017-Ohio-2758, ¶ 26; *Chou v. Chou*, 8th Dist. Cuyahoga No. 80611, 2002-Ohio-5335, ¶ 38. In this case, appellees sought, and the trial court granted appellees, leave to file their motion more than four months before the scheduled trial date. On the record before us, we cannot say that the trial court abused its discretion in granting appellees leave to file their motion. Shingler's second assignment of error is overruled.

### Dismissal of Shingler's Complaint for Failure to State a Claim of Wrongful Discharge in Violation of Public Policy

{¶16} In her first assignment of error, Shingler contends that her complaint states a cognizable common-law claim for wrongful discharge in violation of public policy based on R.C. 4723.03 and 4723.341(C)[5] and that the trial court, therefore, erred in dismissing her complaint.

---

[5]As she did in her opposition to appellees' motion below, Shingler asserts in her appellate brief that her claim for wrongful discharge in violation of public policy is also "based upon violations of" R.C. Chapter 3734, R.C. 4101.11 and 4101.12, 29 C.F.R. 24.102, 29 C.F.R. 1910.120 and "other state and/or federal statutes, administrative

She argues that because she did not file a written report — which she concedes is a requirement for bringing a claim under Ohio's whistleblower statute, R.C. 4113.52 — she has no adequate statutory remedy and is, therefore, entitled to bring a common-law claim for wrongful discharge in violation of public policy. In response, appellees argue that the trial court properly determined that Shingler's common-law public policy claim fails as a matter of law because Shingler had adequate remedies available to her under R.C. 4723.33, 4723.341 and 4113.52 but failed to comply with the requirements for obtaining relief under those provisions.

**Standard of Review**

{¶17} A Civ.R. 12(C) motion for judgment on the pleadings presents only questions of law.[6] *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581-582, 752 N.E.2d 267 (2001). Dismissal of a complaint is appropriate under Civ.R. 12(C) when, after construing all material allegations in the pleadings, along with all reasonable inferences drawn therefrom in favor of the plaintiff, the court finds that the plaintiff can prove no set of facts in support of his or

rules, regulations and constitutions." These provisions relate to solid and hazardous waste, hazardous waste operations and emergency response, an employer's duty to provide a safe workplace and protection against retaliatory action for certain employees related to violations of the Safe Drinking Water Act, the Federal Water Pollution Control Act, the Toxic Substances Control Act, the Solid Waste Disposal Act, the Clean Air Act, the Energy Reorganization Act of 1974, the Comprehensive Environmental Response, Compensation and Liability Act of 1980 and the Atomic Energy Act of 1954. They have no application to the facts alleged here. Accordingly, we do not address these provisions further in determining whether Shingler's complaint states a cognizable common-law claim for wrongful discharge in violation of public policy.

[6] As indicated above, because appellees filed their motion after they filed their answer, technically, it was a motion for judgment on the pleadings pursuant to Civ.R. 12(C) rather than a motion to dismiss. As applied in this case, however, the distinction is not meaningful. The "main difference[s]" between a Civ.R. 12(B)(6) motion and a Civ.R. 12(C) motion are (1) the timing of the motion and (2) what the court may consider when ruling on the motion. *JP Morgan Chase Bank, N.A. v. Belden Oak Furniture Outlet, Inc.*, 5th Dist. Stark No. 2010CA49, 2010-Ohio-4444, ¶ 20-21. A Civ.R. 12(B)(6) motion to dismiss is generally filed prior to the answer; a Civ.R. 12(C) motion for judgment on the pleadings is filed after the close of the pleadings. When ruling on a Civ.R. 12(B)(6) motion to dismiss, the trial court may consider only the allegations of the complaint and any exhibits thereto; when ruling on Civ.R. 12(C) motion, the court may consider both the complaint and the answer as well as any exhibits to those pleadings. *Schmitt v. Educational Serv. Ctr.*, 8th Dist. Cuyahoga No. 97623, 2012-Ohio-2210, ¶ 9. In this case, the parties' arguments focus on the allegations of the complaint. The trial court applies virtually the same standard in ruling on a Civ.12(C) motion for judgment on the pleadings as it applies when ruling on a Civ.R. 12(B)(6) motion to dismiss filed before an answer. *See, e.g., Accelerated Sys. Integration, Inc. v. Hausser & Taylor, L.L.P.*, 8th Dist. Cuyahoga No. 88207, 2007-Ohio-2113, ¶ 32-33 ("'A motion for judgment on the pleadings is the same as a motion to dismiss filed after the pleadings are closed and raises only questions of law.'"), quoting *Case W. Res. Univ. v. Friedman*, 33 Ohio App.3d 347, 515 N.E.2d 1004 (11th Dist.1986); *see also Burdge v. Kerasotes Showplace Theatres, LLC*, 12th Dist. Butler No. CA2006-02-023, 2006-Ohio-4560, ¶ 15, fn.1; *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581, 752 N.E.2d 267 (2001) ("A Civ.R. 12(C) motion for judgment on the pleadings has been characterized as a belated Civ.R. 12(B)(6) motion_for failure to state a claim upon which relief can be granted.").

her claim that would entitle the plaintiff to relief. *State ex rel. Midwest Pride IV, Inc. v. Pontius*, 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996); *Socha v. Weiss*, 8th Dist. Cuyahoga No. 105468, 2017-Ohio-7610, ¶ 9. We review a trial court's decision to grant a motion for judgment on the pleadings de novo. *Socha* at ¶ 10.

{¶18} Construing all material allegations in the pleadings and all reasonable inferences that can drawn therefrom in favor of Shingler, we find that Shingler can prove no set of facts in support of her claim that would entitle her to relief. Accordingly, the trial court did not err in dismissing her complaint.

{¶19} In Ohio, the common-law doctrine of employment at-will governs employment relationships. As such, an employer's termination of employment of an at-will employee does not generally give rise to an action for damages. *Dohme v. Eurand Am. Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11; *Collins v. Rizkana*, 73 Ohio St.3d 65, 67-68, 652 N.E.2d 653 (1995). If, however, an employee is terminated in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations or the common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule. *Dohme* at ¶ 11; *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraphs two and three of the syllabus; *see also Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990).

{¶20} To prevail on a claim of wrongful discharge in violation of public policy, a plaintiff must establish four elements: (1) that a clear public policy exists that is manifested in a state or federal constitution, statute or administrative regulation or in the common law (the "clarity element"); (2) that dismissing an employee under circumstances like those involved in the

plaintiff's dismissal would jeopardize the public policy (the "jeopardy element"); (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation element") and (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification element"). *Collins* at 69-70; *Cruz v. English Nanny & Governess School, Inc.*, 8th Dist. Cuyahoga No. 103714, 2017-Ohio-4176,¶ 65; *Rebello v. Lender Processing, Servs., Inc.*, 2015-Ohio-1380, 30 N.E.3d 999, ¶ 28 (8th Dist.). The clarity and jeopardy elements are questions of law to be decided by the court; the causation and overriding justification elements are questions of fact to be decided by the fact finder. *Collins* at 70; *Cruz* at ¶ 66.

{¶21} R.C. 4723.03 prohibits the unlicensed practice of nursing and prohibits an employer from employing a person not licensed as a nurse to engage in the practice of nursing. There is no dispute in this case that a clear public policy exists, as manifested in R.C. 4723.03 and 4723.341, to prevent the unauthorized practice of nursing and to prevent employers from retaliating against employees who report the unauthorized practice of nursing and other violations of R.C. Chapter 4723. At issue in this case is the jeopardy element.

{¶22} Analysis of the jeopardy element involves an inquiry into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. As the Ohio Supreme Court explained in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526:

"If the statute that establishes the public policy

contains its own

remedies, it is less

likely that tort liability

is necessary to prevent dismissals from interfering with realizing the statutory policy." [2 Perritt, *Employee Dismissal Law and Practice*, Section 7.26, at 71 (4th Ed.1998)]. Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. * * * In that situation, the public policy expressed in the statute would not be jeopardized by the

absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct.

*Wiles* at ¶ 15; *see also Cruz* at ¶ 75 (when analyzing the jeopardy element, "the focus is on whether the employee has a proper and adequate remedy for wrongful termination when an employer discharges the employee in violation of the recognized public policy"); *Rebello* at ¶ 54 (The jeopardy element "requires a showing 'not just that a policy may have been violated [as to the plaintiff] but also that the policy itself is at risk if the discharge of the employee is allowed to continue.'"), quoting *Zwiebel v. Plastipak Packaging, Inc.*, 3d Dist. Shelby No. 17-12-20, 2013-Ohio-3785, ¶ 32.

{¶23} In other words, "it is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the

wrongful conduct." *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 27. Only when a remedy does not exist or is inadequate will a court recognize a common-law wrongful discharge in violation of public policy claim. *Cruz* at ¶ 75; *see also Dolan v. St. Mary's Mem. Home*, 153 Ohio App.3d 441, 2003-Ohio-3383, 794 N.E.2d 716, ¶ 3-17 (1st Dist.) (because she had an adequate remedy under R.C. 3721.24, employee who alleged that she was wrongfully discharged for reporting a supervisor's verbal and emotional abuse of nursing home patients could not bring a common-law claim for wrongful discharge in violation of the public policy embodied in R.C. Chapter 3721; "[h]er remedy lies in an action for retaliatory discharge pursuant to R.C. 3721.24"). "'[A] remedy is not inadequate merely because it does not allow for all avenues of recovery.'" *House v. Iacovelli*, 2018-Ohio-443, 94 N.E.3d 599, ¶ 16 (9th Dist.), quoting *Coon v. Tech. Constr. Specialties, Inc.*, 9th Dist. Summit No. 22317, 2005-Ohio-4080, ¶ 22.

**{¶24}** Shingler argues that because she did not strictly comply with the requirements for bringing a claim under R.C. 4113.52, she has no adequate statutory remedy and is, therefore, entitled to bring a claim for wrongful discharge in violation of the public policy based on the public policy manifested in R.C. 4723.03 and 4723.341. We disagree. Under the facts and circumstances here, we find that Shingler's failure to comply with R.C. 4113.52 is fatal to her wrongful discharge claim.

**{¶25}** R.C. 4723.33 and 4723.341 provide specific statutory protections for employees who report violations of R.C. Chapter 4723. Those provisions, in turn incorporate the requirements and remedies set forth in R.C. 4113.51 to 4113.53. R.C. 4723.33, entitled "[w]histleblower protection," provides:

> A registered nurse, licensed practical nurse, dialysis technician, community health worker, or medication aide *who in good faith makes a report under this chapter or*

*any other provision of the Revised Code regarding a violation of this chapter or any other provision of the Revised Code*, or participates in any investigation, administrative proceeding, or judicial proceeding resulting from the report, *has the full protection against retaliatory action provided by sections 4113.51 to 4113.53 of the Revised Code.*

(Emphasis added.)

{¶26} R.C. 4723.341 further provides, in relevant part:

(B) In the absence of fraud or bad faith, *no person reporting to the board of nursing* or testifying in an adjudication conducted under Chapter 119. of the Revised Code *with regard to* alleged incidents of negligence or malpractice or *matters subject to this chapter* or sections 3123.41 to 3123.50 of the Revised Code and any applicable rules adopted under section 3123.63 of the Revised Code *shall be subject to* either of the following based on making the report or testifying:

(1) Liability in damages in a civil action for injury, death, or loss to person or property;

(2) Discipline or *dismissal by an employer*.

(C) *An individual who is disciplined or dismissed in violation of division (B)(2) of this section has the same rights and duties accorded an employee under sections 4113.52 and 4113.53* of the Revised Code.

(Emphasis added.)

{¶27} R.C. 4113.52 provides in relevant part:

(A)(1)(a)_If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. * * *

(D)_If an employer takes any disciplinary or retaliatory action against an

employee as a result of the employee's having filed a report under division (A) of

this section, the employee may bring a civil action for appropriate injunctive relief or for the remedies set forth in division (E) of this section, or both, within one hundred eighty days after the date the disciplinary or retaliatory action was taken, in a court of common pleas in accordance with the Rules of Civil Procedure. * * *

{¶28}   In this case, a statutory remedy exists under R.C. 4723.33 and 4723.341 — incorporating the "rights" and "duties" granted "whistleblowing" employees under R.C. 4113.52 — that addresses  society's interest in protecting employees who report violations of R.C. Chapter 4723.

{¶29} Because the legislature specifically adopted the "rights and duties" under R.C. 4113.52 as the protection to be accorded employees who report violations of Chapter 4723 in R.C. 4723.33 and 4723.341 and because Shingler did not comply with her "duties" under R.C. 4113.52, she did not "compl[y] with the statute embodying the public policy" at issue and, therefore, was not entitled to recover under R.C. 4113.52 or 4723.341.   *See, e.g., Davidson*, 125 Ohio App.3d   at 649-652, 709 N.E.2d 510 (accounting firm employee who was terminated for reporting "criminal conduct of unlawful tax improprieties" to his employer could not maintain a common-law claim for wrongful discharge in violation of public policy where policies employee relied on were embodied in the whistleblower statute, with which employee had failed to comply); *Jackson v. NaphCare, Inc.,* S.D. Ohio No. 3:11-cv-00205, 2011 U.S. Dist. LEXIS 94817 (Aug. 24, 2011) (emergency medical technician who informed his employer that one of its nurse practitioners provided medical care while under influence of a narcotic in violation of R.C. 4723.28 and filed complaint with Ohio Board of Nursing relating to same could not bring a common-law claim wrongful discharge in violation of public policy claim; since failure to comply with requirements of the whistleblower statute was fatal to his statutory claims under

R.C. 4723.341 and 4113.52, his common-law public policy claims based on the same statutory provisions failed as well). The fact that Shingler failed to comply with the requirements for relief under these statutes does not render the statutory remedy provided inadequate. Shingler does not dispute that the statutory remedy provided aggrieved employees who comply with R.C. 4723.341 and 4113.52 is adequate.

**{¶30}** Rather, Shingler argues that we should recognize a common-law claim for wrongful discharge in violation of public policy under the circumstances of this case because otherwise employers would be "free to terminate persons acting in accordance with the reporting requirements of the Nurse Practice Act, simply by doing so before a written report of violations is received." However, this is not that case. Shingler has not alleged that she was fired in order to prevent her from filing a written report or that she otherwise could not have complied with, or would have had difficulty complying with, the statutory requirements for bringing a retaliatory discharge claim set forth in R.C. 4723.341 and 4113.52. *Compare Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 2-28 (recognizing common-law claim for wrongful discharge in violation of public policy where injured employee was fired without reason within one hour of reporting injury, before employee could file a workers' compensation claim, such that employee did not satisfy the requirements for bringing a statutory retaliatory discharge claim under R.C. 4123.90). Shingler has not cited any authority in which a plaintiff's failure to comply with the applicable requirements for obtaining a statutory remedy has resulted in the recognition of a viable common-law claim for wrongful discharge in violation of public policy where the plaintiff could have reasonably complied with the requirements for bringing a statutory claim but failed to do so.

**{¶31}** Based on the record before us, we cannot say that the public policy against the unauthorized practice of nursing and against dismissing an employee for reporting a violation of R.C. 4723.03 would be jeopardized without recognizing a common-law claim for wrongful discharge under circumstances like these. *See, e.g., Leininger*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, at ¶ 33 (jeopardy element necessary to support a common-law tort claim for wrongful discharge based on the public policy against age discrimination was not satisfied because R.C. Chapter 4112 "adequately protects the state's policy against age discrimination in employment through the remedies it offers to aggrieved employees"); *Wiles*, 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526, at ¶ 14-22 (refusing to recognize a common-law claim for wrongful discharge for violation of the public policy manifested in the Family and Medical Leave Act, concluding that "statutory remedies provide an effective_vehicle for vindicating the statute's policy, obviating recognition of a wrongful discharge claim based on the same statute").

**{¶32}** Because Shingler did not satisfy the jeopardy element of her wrongful discharge in violation of public policy claim, the trial court properly dismissed her complaint. Shingler's first assignment of error is overruled.

**{¶33}** Judgment affirmed.

It is ordered that appellees recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

EILEEN A. GALLAGHER, ADMINISTRATIVE JUDGE

TIM McCORMACK, J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION ATTACHED)

MARY EILEEN KILBANE, J., DISSENTING:

{¶34} I respectfully dissent. I would find that the trial court's dismissal of Shingler's complaint was improvidently granted at this stage of the proceedings.

{¶35} Shingler had been employed as Director of Nursing with Provider Services from 2008 to August 8, 2012, when she was required to sign a separation agreement terminating her employment, after she reported to her employer nine days earlier that the marketing secretary, Burdett, was allegedly engaging in unauthorized patient care of the nursing home residents. Shingler received reports from certified nursing assistants that Burdett allegedly assisted the residents "in ambulating to and from and using the toilet" and laid "a patient down" against doctor's orders.

{¶36} Shingler received the first report on July 30, 2012. That same day she reported Burdett's behavior to Grewell, a nursing home administrator. The next day, July 31, 2012, Shingler received two more complaints that she then reported to Grewell. Two days later, she reported these violations to the Ohio Board of Nursing. The next day, on August 3, 2012, Shingler was called to a meeting with appellees and ordered to turn over all materials she had relating to her investigation of the unlicensed practice of nursing at Lafayette. At the conclusion of the meeting, Shingler was placed on administrative leave. On August 8, 2012, which was nine days after her initial report and five days after being placed on leave, Shingler attended

another meeting with appellees. At this meeting, she was not permitted to have counsel and was required to sign a separation agreement terminating her employment.

{¶37} In *Greeley*, 49 Ohio St.3d 228, 551 N.E.2d 981 at ¶ 8, the Ohio Supreme Court recognized "that the judicial doctrine of employment at will must yield when it contravenes * * * public policy[.]"[7] In the instant case, the public policy implications are compelling — the unauthorized practice of patient care. Particularly disturbing in this case is that three different nursing assistants reported that the marketing secretary was allegedly engaging in the medical care of nursing home patients. Patients, who more often than not, have no voice or even the capacity to fully comprehend their surroundings.

{¶38} A plaintiff must prove four elements to prevail on a *Greeley* claim. At issue here is the jeopardy element. With regard to the jeopardy element, "[t]he focus is on whether the employee has a proper and adequate remedy for wrongful termination when an employer discharges the employee in violation of the recognized public policy." *Cruz*, 2017-Ohio-4176, 92 N.E.3d 143 at ¶ 75. Under this analysis, I would find that Shingler was not afforded an adequate remedy for the almost instanteous retaliatory dismissal. Shingler was forced to resign her position with Provider Services only nine days after she initially reported that the unlicensed marketing secretary was providing unauthorized nursing care. For five of those days, she was placed on administrative leave. When construing all material factual allegations in her complaint and all reasonable inferences therefrom in Shingler's favor, it is unclear if Provider Services terminated her employment abruptly in order to prevent Shingler from filing a written

---

[7]In *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 149, 1997-Ohio-219, 677 N.E.2d 308, the Ohio Supreme Court recognized that the wrongfully discharged employee was entitled to maintain his *Greeley* claim either in addition to or in lieu of his statutory cause of action. The court held, that "[a]n at-will employee who is discharged or disciplined in violation of R.C. 4113.52 may maintain a statutory cause of action for the violation, a common-law cause of action in tort, or both, but is not entitled to double recovery." *Id.* at paragraph five of the syllabus.

report.   Under these circumstances, the statutory relief set forth in R.C. Chapter 4723 and R.C. 4113.52 was inadequate.

{¶39} Based on the record before us, it cannot be said beyond doubt that Shingler could prove no set of facts in support of her claim that would entitle her to relief.   For these reasons, I would find that the dismissal of Shingler's case at this stage of the proceedings was premature.